**ESTATE of William Le BARON, Sr., William Le Baron, Jr., doing business as William Le Baron & Son, a partnership; Walter B. Jarrett and James D. Jarrett, doing business as W. G. Jarrett & Sons, a partnership; George Louis Marengo, Don Mitchell Manor, James Aubrey Manor and Louis Glen Manor, doing business as Manor Bros., a partnership; and Ebert Garland Gassaway, Appellants,**

v.

**ROHM AND HAAS COMPANY and Monsanto Company, Appellees.**

No. 24942.

United States Court of Appeals, Ninth Circuit.

Feb. 10, 1971.

As Amended on Denial of Rehearing and Rehearing En Banc July 14, 1971.

Lawrence Alioto (argued), Fouke, Wertsch & Hayes, San Francisco, Cal., Daniel L. Berman, Salt Lake City, Utah, for appellants.

Morrison, Foerster, Holloway, Clinton & Clark, Pillsbury, Madison & Sutro, Richard J. Archer, San Francisco, Cal., H. Francis Delone, Philadelphia, Pa., William F. Rogers, St. Louis, Mo., Dechert, Price & Rhoads, Philadelphia, Pa., for appellees.

Before HAMLEY and BROWNING, Circuit Judges, and FERGUSON,* District Judge.

PER CURIAM:

This is a private treble damage action under Section 4 of the Clayton Act (15 U.S.C. § 15), in which appellants allege that appellees have violated Section 1 of the Sherman Act (15 U.S.C. § 1). It was brought as a class action on behalf of California rice growers.

Appellees manufacture and sell agricultural chemicals. The product involved here is propanil, a herbicide used to kill weeds and grass in rice fields. Stam is the trade name of the Rohm and Haas product, and that of Monsanto's is Rogue. Appellants claim that appellees conspired to fix the price of their products at unreasonably high levels, causing rice growers to pay more than they would have paid absent the combination.

The district court severed the issues of liability and damages, and the case was submitted to a jury on the single issue:

"Do you find that the plaintiffs have established by a preponderance of the evidence that the defendants

---

* Hon. Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

Rohn and Haas and Monsanto conspired to fix the prices of Stam and Rogue?"

The verdict was in favor of appellees.

On this appeal, pursuant to 28 U.S.C. § 1291, appellants claim error in two matters: (1) improper instructions, and (2) refusal to permit appellants' discovery of appellees' profit margins.

### The Instruction Issue

■ The jury was instructed in accordance with a set of stipulated instructions. After deliberating for a period of time, the jury requested that certain instructions on credibility of witnesses and circumstantial proof of the conspiracy be repeated. In rereading the instructions, the district court interpolated at several points. Appellants claimed that the interpolations negated the instructions.

Outside the presence of the jury, the court considered the claims of error. The appellants offered to waive their objections, provided the court cure the alleged errors by a rereading of the appropriate instruction. This the court did. The appellants should not now be permitted to complain. If the interpolations constituted error, it was directly waived by the third reading of the instruction.

### The Profit Issue

Early in the discovery proceedings, appellants moved, pursuant to Rule 34 of the Federal Rules of Civil Procedure, to discover appellees' profit margins. That motion was made before a judge other than the trial judge. It was denied due to "the absence of showing of good cause". The court furthermore expressed concern over the possibility that disclosure of profit margins might require the appellees to turn over confidential information to a competitor.

■ The fact that discovery might result in the disclosure of sensitive competitive information is not a basis for denying such discovery. Olympic Refin-

ing Co. v. Carter, 332 F.2d 260 (9th Cir. 1964), cert. denied, 379 U.S. 900, 85 S. Ct. 186, 13 L.Ed.2d 175.

A year later, appellants made another motion for discovery of appellees' price margins. It was heard by a second judge. That district judge expressed the view "with respect to costs, I feel that the cost figures are certainly relevant material and should be made available". However, he denied the motion, stating that he was bound by the first judge's ruling and in "light of counsel's representation * * * there has been no change in the condition since the ruling was made".

At the pre-trial conference, appellants renewed their motion for profit discovery before the trial judge. Appellants contended that the use of propanil had been banned recently by the California Department of Agriculture, and that rendered the competitive disclosure problem moot. The trial judge deferred to the previous rulings and denied the motion.

The appellants, for the fourth time, again made their motion during the trial. The trial judge denied the motion, holding that the allowance of the requested discovery rests in the exercise of the sound discretion of the court; two judges had already ruled on the question; the data would be prejudicial to the jury; the information lacked probative value, and its introduction would complicate the case.

During the trial, appellees introduced expert testimony to the effect that the jury could not infer a conspiracy between appellees based on identical prices since the two products were fungible.

At all times appellants were willing for the district court to enter appropriate protective orders in order to eliminate any possibility that the profit disclosure would benefit a competitor. After the jury verdict, appellees disclosed to the court and appellants certain cost and profit information pursuant to a stipulated protective order.

**578**

The refusal to permit discovery of appellees' profit margins constituted reversible error. The information sought certainly is relevant to the issue of conspiracy to fix prices. It may be true that in a two-seller market of fungible products, the products are likely to be priced at the same levels in any given market, and thus no inference of price fixing could be drawn therefrom. Independent Iron Works, Inc. v. U. S. Steel Corp., 322 F.2d 656, at 665 (9th Cir. 1963), cert. denied, 375 U.S. 922, 84 S. Ct. 267, 11 L.Ed.2d 165. However, evidence that pricing schedules were identical for both products warrants a scrutiny of profit margins. Competition could be inferred from a low profit margin in such a market. Similarly, evidence of high profit margins is probative of the existence of a conspiracy. American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); Baush Machine Tool Co. v. Aluminum Co. of America, 63 F.2d 778 (2d Cir. 1933). In *American Tobacco Co.*, it was recognized that if competitors raise their prices during a period of declining costs and reap large profits as a result, and then reduce prices only when competition from others makes itself felt, that constituted probative evidence of a price-fixing conspiracy. 328 U.S. at 804–806, 66 S.Ct. 1125. Here there was evidence that appellees greatly reduced their prices after a competitor entered the market.

In determining profits, there are a great many elements to consider: Cost of manufacturing, costs of research and development, marketing costs, legal, tax and general overhead, by way of illustration. When multi-product companies are involved, the problems of allocation of indirect costs certainly may lead to disputes, as do most matters in litigation. The difficulty in computation and explanatory testimony may present problems at the trial and may create confusion disproportionate to its probative value. But that can hardly be used as a reason for denying discovery of relevant evidence. The fact that information might ultimately be excluded at trial is not a basis for refusing to grant discovery. 4 Moore's Federal Practice ¶ 26.-56(4).

It is not to be inferred that when appellants obtain the relevant testimony of profit margins, they may use it at trial. At that time the trial court in the exercise of its discretion may control the introduction of evidence so as to minimize problems of time and confusion. *See* United States v. Krulewitch, 145 F.2d 76, 80 (2d Cir. 1944). But how can a trial court properly exercise that discretion when it has nothing before it to control?

United States v. Chas. Pfizer & Co., 426 F.2d 32 (2d Cir. 1970), does not negate the relevance of profit data in price-fixing conspiracy cases. There the court disapproved the "high profits" instruction, not because it did not have probative value but because the instruction diverted the jury in a criminal case from the primary issue, as charged in the indictment and bill of particulars, as to whether the defendants conspired at specific meetings.

Appellants have submitted to this court a capsulated summary of their profit margins. The furnishing of such material has no bearing on the propriety of discovery before trial of relevant information. It is not the function of this court to speculate what the impact of the information may have had upon the jury when weighed with other circumstantial evidence. Flintkote Company v. Lysfjord, 246 F.2d 368 (9th Cir. 1957), cert. denied, 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46.

The case is remanded to the district court. The district court is directed to permit discovery of appellees' profit margins, with such protective orders as may be necessary. Thereafter, the district court shall conduct proceedings to determine whether or not the data is admissible evidence at trial. In the event the district court determines that it is admissible in whole or in part, then the district court shall order a new trial. In the event that no part of the data is admissible, then a judgment in favor of appellees should again be entered.