**UNITED STATES of America, Plaintiff,**

**v.**

**INTERNATIONAL BUSINESS MA-CHINES CORPORATION,**
**Defendant.**

**No. 69 Civ. 200 (DNE).**

United States District Court,
S. D. New York.

Aug. 2, 1974.

Raymond M. Carlson, John H. Earle and Burney P. C. Boote and Steven M. Woghin, Dept. of Justice, Antitrust Div., Washington, D. C., for plaintiff.

Thomas D. Barr, Cravath, Swaine & Moore, New York City, for defendant.

## OPINION

EDELSTEIN, Chief Judge.

Plaintiff has moved pursuant to Rules 26(b), 30(c) and 37(a)(2) of the Federal Rules of Civil Procedure, "for a ruling on the propriety of instructions by counsel for the defendant, upon the depositions of Frank T. Cary, Chairman and Chief Executive of the defendant, and William A. Hartigan, [an] employee of defendant, whereby said deponents

did not, upon instructions by their counsel which plaintiff deems to be improper, answer questions propounded to said witnesses in the course of their depositions."

The relief requested by plaintiff is as follows:

(1) an order of the Court requiring that the Cary and Hartigan depositions be convened and the witnesses be required to answer the questions propounded during the proceedings on March 4, 5 and 6, 1974, as to Mr. Cary, and March 6, 1974, as to Mr. Hartigan, including other questions suggested by or pertinent to the answers given; (2) that IBM's counsel be instructed not to obstruct, obfuscate or otherwise interfere with the further interrogation of Mr. Cary on matters relating to the subjects of the instant motion, specifically including the subject matters of peripherals [sic] activities and leasing company activities, still to be covered in completing Mr. Cary's deposition; (3) that IBM's counsel be instructed not to obstruct, obfuscate or otherwise interfere with the further interrogation of Mr. Hartigan in factual areas embraced by IBM's claim that certain data processing machines or systems, such as the 360 Model 90 Series, have been eliminated from plaintiff's market allegations by its responses to Requests for Admissions; and (4) a general instruction be issued to IBM's counsel that similar objections shall not be made in depositions conducted by the Government of IBM officials and employees, absent further order of the Court.

Defendant, International Business Machines Corporation (IBM), has cross-moved pursuant to Rules 26(c) and 30(d) of the Federal Rules of Civil Procedure for a protective order directing:

(1) that the depositions of IBM witnesses be limited to areas that are relevant to the subject matter of this action;

(2) that the government may not inquire into "post-complaint" issues, including the so-called "peripherals" and "leasing" issues, or any other activities of IBM occurring after the date of the complaint, except insofar as such inquiry is calculated to lead to the discovery of admissible evidence concerning IBM's pre-complaint activities; and

(3) that the government may not inquire about IBM products that it deems not to be "general purpose" computers, except to inquire into IBM's contentions to the contrary.

Cutting through the procedural morass that the parties have entangled themselves in, the issue is whether plaintiff is entitled to answers from deponents Cary and Hartigan in those instances in which counsel for defendant has instructed these witnesses not to answer questions propounded by Government counsel. During their depositions, Cary and Hartigan, upon the advice of counsel, refused to give answers to questions pertaining to three areas of inquiry. Since the parties are in agreement with respect to these areas, it is unnecessary to rule on the specific questions to which answers were refused. Rather the court can determine whether the Government is entitled to discovery on the subject matters at issue.

IBM maintains that where the Government, in response to its Requests for Admission, has stated that certain IBM products [1] are not within any of the relevant markets that IBM is alleged to

[1]. The Government has denied that the following IBM CPU's or systems were "general purpose": 704, 709, 1620, 1800, 7040, 7070, 7074, 7090; System 360 models 44, 75, 85, 90, 91, 92 and 95; and the Systems 7, the 4 pi, and the LVDC. See, e. g., Plaintiff's Response to IBM's Requests for Admissions, dated February 20, 1974, ¶¶ 61.0, 75.0, 114.7, 241.2, 328.3, 328.4, 339.0.

have monopolized, the Government is not entitled to discovery on these products except to the extent of ascertaining why IBM contends that a particular product is within the relevant market. The second area in which defendant has repelled the discovery demands of plaintiff concerns the post-complaint conduct of defendant in the computer leasing area. IBM maintains that plaintiff must amend its complaint to bring in issues relating to the post-complaint activities of defendant with respect to leasing. The last area in dispute concerns IBM's post-complaint activities in the peripheral equipment market. Here again defendant asserts that the Government must amend its complaint to bring into the case issues relating to IBM's activities in the peripheral equipment area.

Although there are two motions currently before the court, the substantive issues underlying these motions are the same.

In support of its demands for discovery the Government makes two procedural and two substantive arguments. The procedural arguments are as follows:

(1) the Federal Rules of Civil Procedure require that evidence be taken on deposition, absent a claim of privilege recognized by the law, subject to the objections (Rule 30(c), Federal Rules of Civil Procedure); and (2) the Rules require the party seeking protection from interrogation which annoys, embarrasses or oppresses him, or causes him undue burden or expense, to seek a protective order upon a proper motion and showing of good cause (Rule 26(c)).

Plaintiff contends that IBM's view that relevancy must flow from "the fair boundaries of the complaint" is unduly restrictive, and that although one initially must look to the pleadings for the general boundaries of relevancy, the precise parameters of relevancy are fixed by the subject matter in issue and not the particular pleadings. *See, e. g.* Enger-Kress Co. v. Amity Leather Products Co., 18 F.R.D. 347, 348–349 (E. D.Wis.1955); Foremost Promotions, Inc. v. Pabst Brewing Co., 15 F.R.D. 128, 129 (N.D.Ill.1953); Kaiser-Frazer Corp. v. Otis & Co., 11 F.R.D. 50 (S.D. N.Y.1951); Stevenson v. Melady, 1 F.R. D. 329, 330 (S.D.N.Y.1940).

Having asserted the well established proposition that relevancy is measured by the subject matter of the action, plaintiff contends that the matters at issue are clearly relevant to the subject matter of the instant case. First, as to IBM's leasing practices, plaintiff submitted a pre-complaint document, dated December 12, 1968, from IBM's files which indicates that "IBM's pricing practices as outlined in the complaint[2] were considered by plaintiff [and defendant] to have had a profound impact on leasing companies and the leasing market." With respect to the peripheral

---

2. The pricing practice outlined in the complaint which is alleged by plaintiff "as a specific business practice employed by defendant in furtherance of its attempt to monopolize and monopolization was its pricing policy of quoting a single price for a bundle of computer products and services." Complaint ¶ 20(a), which provides as follows:

20. Pursuant to and in furtherance of the aforesaid attempt to monopolize and the monopolization, the defendant has pursued a manufacturing and marketing policy that has prevented competing manufacturers of general purpose digital computers from having an adequate opportunity effectively to compete for business in the general purpose digital computer market, and has done, among other acts, the following:
(a) Maintained a pricing policy whereby it quotes a single price for hardware, software and related support and, thereunder, (i) discriminated among customers by providing certain customers with extensive software and related support in a manner that unreasonably inhibited the entry or growth of competitors; and (ii) limited the development and scope of activities of an independent software and computer support industry as a result of which the ability of its competitors to compete effectively was unreasonably impaired;

equipment market, plaintiff contends that

> [w]hile it is true that the Government has not alleged monopolization of the peripheral equipment market, IBM's pricing policies in that market, being intimately interconnected with its other computer policies, including the effect of such policies, bear significantly on defendant's attempt to monopolize and its monopolization of the relevant markets alleged.

Consequently, the Government maintains that IBM's practices in the leasing company and peripheral equipment markets are "not only relevant to the subject matter of this case, but are relevant to the precise issues set forth in the complaint."

The second substantive argument asserted by plaintiff concerns the relevancy of IBM products not specifically alleged to be within the relevant markets asserted by plaintiff. The Government contends that the decisional history of the Sherman Act, 15 U.S.C. § 1 et seq. (1970) [the Act] demonstrates that the Act

> focuses on a scheme of activity rather than specific acts. If the specific acts are part of the scheme, even if wholly innocent in and of themselves and the scheme as a whole falls within the Act's prohibition, the specific acts are subject to scrutiny.

Accordingly, plaintiff maintains that to the extent that defendant's activities with respect to products—even though not within plaintiff's concept of the relevant market—bear on IBM's actions in regard to the specific charges of monopolization of the relevant markets alleged, plaintiff is entitled to discovery regarding these activities.

In controversion of these arguments, defendant raises three points. First, that discovery must be limited to matters within the "fair" parameters of the complaint. While acknowledging that pretrial discovery is not limited to the precise issues framed by the complaint and that discovery may be had if there is any possibility that the information sought is relevant, defendant, nevertheless, maintains that the discovery sought by plaintiff's motion is inappropriate. Defendant articulated this position as follows:

> The complaint charges monopolization and attempted monopolization of trade and commerce in "general purpose digital computers". (Complaint ¶ 19.) Nothing in the complaint even remotely suggests that IBM monopolized the peripherals market or the leasing market, or that its activities in those areas in any way helped it attain or maintain monopoly power in the markets alleged by plaintiff. Indeed, plaintiff has defined general purpose digital computers so as to exclude peripheral equipment. Thus, the government may not inquire into any activities—especially activities that occurred after the complaint was filed —that may be related to a charge not made that IBM has monopolized any market *other* than general purpose digital computers as it defines that market.

IBM's Memorandum in Support of Its Motion for a Protective Order at 4 (emphasis in original) (footnote omitted). Additionally, IBM contends that since the case is but a short time away from trial, "the time has long since passed for plaintiff to argue now that its case may comprehend issues and activities that were not even hinted at in the complaint."

The next major argument raised by defendant is that with respect to post-complaint activities the complaint must be amended or supplemented before discovery should be allowed in these areas, unless plaintiff can demonstrate that post-complaint discovery will lead to ad-

missible evidence regarding pre-complaint activities. In support of this assertion, IBM cites to the following authority: Devex Corp. v. General Motors Corp., 275 F.Supp. 310 (D.Del.1967); Singer Mfg. Co. v. Brother Int'l Corp., 191 F.Supp. 322 (S.D.N.Y.1960); *cf.* Northern Assurance Co. v. Associated Independent Dealers, 313 F.Supp. 816 (D.Minn.1970); Cinema Amusements, Inc. v. Loews, Inc., 7 F.R.D. 318 (D.Del. 1947).

With respect to amending or supplementing the complaint, defendant asserts that the Attorney General must expressly approve any amended or supplemental complaint in Government Sherman Act cases. Sherman Act § 4, 15 U. S.C. § 4 (1970). Moreover, defendant assumes that since plaintiff has not sought leave to amend or to supplement its complaint, then "the Attorney General has not directed such a new pleading."

Lastly, IBM contends that plaintiff should be denied discovery with respect to IBM computer products that plaintiff has admitted are not within plaintiff's definition of the relevant market. Defendant maintains that

> The purpose of discovery—especially such methods as Requests for Admissions—ought to be under the Court's supervision to sharpen and focus the issues to be tried. Such procedures fail if the results are ignored and discovery continues to sprawl in all directions.

Having set forth the issue raised by the instant motions and the respective arguments of the parties, the court can now resolve the instant controversy.

■ At the outset it is important to note that the complaint charges defendant with a continuing violation of Section 2 of the Sherman Act, 15 U.S.C. § 2

(1970) (Complaint ¶ 19). Specifically, the complaint charges that defendant "has attempted and has monopolized . . . interstate trade and commerce in *general purpose digital computers* . . . " (Complaint ¶ 19) (emphasis added). Thus, the relevant market alleged by plaintiff is the market for general purpose digital computers. Defendant has steadfastly maintained that plaintiff's concept of the relevant market is incorrect. Defendant has argued that the relevant market is broader than that alleged by plaintiff. It would include within the relevant market all products manufactured and services provided by the electronic data processing (EDP) industry. *See generally* Transcript of October 30, 1972 at 14–15. A necessary element of both the monopolization and attempted monopolization charges is the establishment of a relevant market. *See, e. g.,* Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), in which Mr. Justice Clark, speaking for the Court, stated:

> To establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would . . . be necessary to appraise the exclusionary power . . . in terms of the relevant market for the product involved.

382 U.S. at 177, 86 S.Ct. at 350. Since the parties cannot agree with respect to what constitutes the relevant market, it will be necessary for the court to make this determination.

■ IBM indicates that in response to its Requests for Admission, plaintiff has stated that certain IBM products are not within the Government's concept of the relevant market.[3] With respect to these products, defendant contends that plaintiff is not entitled to discovery

---

3. *See* note 1 *supra.*

except "to inquiry into IBM's contention that those machines are properly part of any relevant market." In determining the relevant market, the court may decide that a particular IBM product, which plaintiff has admitted is not a general purpose digital computer, is properly within the relevant market. Consequently, it would be necessary for plaintiff to have discovery with respect to such a product beyond that which defendant concedes is proper. Accordingly, plaintiff should be free to inquire about IBM products which it has contended are not "general purpose digital computers."

This analysis can also be applied to IBM's refusal to permit the Government discovery with respect to the so-called "peripheral equipment" and "leasing" markets. With respect to peripheral equipment IBM has specifically admitted that plaintiff may inquire into its allegation that such products should be included in the relevant market:

> It is, of course, not relevant here that peripherals may properly be included in any relevant market. They are simply not alleged to be in any market that the government *charges* was monopolized. Plaintiff may certainly inquire of IBM witnesses in an effort to learn whether its market definition is correct and we have not instructed IBM witnesses to the contrary.

IBM's Memorandum in Support of Its Motion for a Protective Order at 4 n.*. As to the "leasing market," it is plain that IBM's definition of the relevant market in terms of the entire EDP industry would certainly encompass leasing companies. See Transcript of October 30, 1972 at 15, in which counsel for defendant, articulating IBM's concept of the relevant market, stated: "We also say that the leasing companies ought to be considered . . . ." Accordingly, since the court may find that "peripheral equipment" and "leasing" activities constitute part of the relevant market, plaintiff is entitled to discovery regarding IBM's activities in these areas.

The fact that the leasing and peripheral equipment areas in which plaintiff seeks discovery involve post-complaint activities of defendant presents no problem. As stated earlier the complaint charges a continuing violation. Consequently, however the market is defined, the violation charged encompasses the post-complaint time period. Therefore, both the pre-complaint and post-complaint activities of defendant regarding the peripheral equipment and leasing markets may be inquired into by plaintiff.

In addition to the analysis presented above, the court is of the view that plaintiff is entitled to the discovery it seeks under a strict Rule 26(b)(1) analysis. Even if the relevant market were confined to "general purpose digital computers," the broad scope of discovery under the Federal Rules would permit inquiry by plaintiff into the three areas under review. This court has previously discussed the liberal construction accorded to Rule 26(b)(1) when it stated as follows:

> The parameters of relevance in the context of any litigation is necessarily imprecise. Most authorities admit that it is impossible to formulate a general rule defining the term "relevance." Rule 26(b)(1) [however] makes it clear that admissibility at trial is not a limitation on discovery provided that "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." The sweeping scope of this language led one distinguished commentator to suggest that "discovery should be relevant where there is *any possibility* that the information sought may be relevant to the subject matter of the action. C. Wright, Law of Federal Courts § 81, at 359 n.47 (2d ed. 1970) (emphasis added).

Mallinckrodt Chemical Works v. Goldman, Sachs & Co., 58 F.R.D. 348, 353 (S.D.N.Y.1973) (footnote omitted).[4] Applying this standard to the issues raised by the instant motion, the court finds that plaintiff is entitled to discovery with respect to (1) IBM products which it has denied are general purpose digital computers; (2) IBM's post-complaint activities regarding peripheral equipment; and (3) IBM's post-complaint activities with respect to leasing.

Accordingly, plaintiff's motion for an order requiring that the Cary and Hartigan depositions be reconvened and that the witnesses be required to answer the questions propounded during their prior depositions on March 4, 5 and 6, 1974, as to Cary and March 6, 1974, as to Hartigan, including other questions suggested by or pertinent to the answers given is granted. Furthermore, plaintiff has leave of the court to redepose any other IBM witness who refused to answer questions on the same grounds as did Cary and Hartigan. Additionally, the court is issuing a general instruction to both parties as follows: All objections to requests for discovery predicated on the ground that the item or answer sought is irrelevant to the subject matter of this action are to be noted, but the item sought or answer requested shall be given.

Defendant's motion for a protective order is denied in all respects.

So ordered.

4. The broad scope of discovery as articulated in the text is also reflected in an opinion by Judge Leahy shortly after the adoption of the Federal Rules of Civil Procedure. In Hercules Powder Co. v. Rohm & Haas Co., 3 F.R.D. 302 (D.Del.1943), Judge Leahy stated as follows:

Unless it is palpable that the evidence sought can have no possible bearing upon the issues, the spirit of the new rules calls for every relevant fact, however, remote, to be brought out for the inspection not only of the opposing party but for the benefit of the court which in due course can eliminate those facts which are not to be considered in determining the ultimate issues.

*Id.* at 304.