**In Re SHOPPING CARTS ANTITRUST LITIGATION.**

No. M–21–29–CLB.
MDL No. 451–CLB.

United States District Court,
S. D. New York.

Feb. 9, 1982.

Stanley Grossman, Pomerantz, Levy, Haudek & Block, Robert Skirnick, Wolf, Popper, Ross, Wolf & Jones, New York City, class action plaintiffs' co-lead counsel.

Robert N. Kaplan, Kaplan, Kilsheimer & Foley, New York City, class action plaintiffs discovery coordinator.

Allen D. Black, Arthur M. Kaplan, Fine, Kaplan & Black, Philadelphia, Pa., class action plaintiffs' briefing coordinator.

Mark L. Austrian, Jeffrey King, Collier, Shannon, Rill & Scott, Washington, D. C., Gary F. Bendinger, Giauge & Williams, Salt Lake City, Utah, Joseph Tydings, Stuart Lesansky, Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, Bruce Montgomery, Richard A. Johnson, Arnold & Porter, Washington, D. C., Josef D. Cooper, Kirk A. McKinney, Cooper, Kirkham, Hainline & McKinney, San Francisco, Cal., Harold E. Kohn, Donald L. Weinberg, Kohn, Savett, Marion & Graf, Philadelphia, Pa., non-class action plaintiffs coordinating committee.

Webster & Sheffield, Albert M. Appel, Charles T. Lee, New York City, for Roblin Industries, Inc.

Sonnenschein, Carlin, Nath & Rosenthal, Gary Senner, James F. Holderman, Chicago, Ill., for Unarco Industries, Inc.

Gibson, Dunn & Crutcher, Paul G. Bower, Los Angeles, Cal., for Gleason Corp. and Technibuilt Corp.

Winston & Strawn, David S. Acker, Chicago, Ill., for Tote-Cart Co.

## MEMORANDUM AND ORDER

### [Discovery]

BRIEANT, District Judge.

These actions were preceded in time by a criminal antitrust action, *United States v. Roblin Industries, Inc.*, 80 Cr. 530, Indictment filed September 4, 1980 (S.D.N.Y.), in which four corporate defendants herein pleaded *nolo contendere* to an indictment charging price fixing in the shopping cart manufacturing industry. The plaintiffs now seek treble damages in this private civil action. Plaintiffs filed fifty-six joint interrogatories with subparts totaling one hundred ninety-one questions. Defendants filed joint objections to many of these questions. The parties have resolved their disputes as to the bulk of the interrogatories, however, there still remain some disputed items.

By notice of motion filed October 29, 1981, plaintiffs seek an order pursuant to Rule 37, F.R.Civ.P., overruling defendants' objections and compelling answers to interrogatories 15, 19, 27, 28, 52 and 53, which all defendants have refused to answer, and interrogatory 35, which only defendants Gleason and Technibuilt have refused to answer.

*Interrogatories 15 and 19—Grand Jury Secrecy*

Interrogatory 15 requests that the corporate defendants identify those persons who testified before the grand jury in *United States v. Roblin Industries* and state the date(s) on which these individuals gave testimony.[1] Interrogatory 19 requests that the corporate defendants identify those persons who were interviewed by the Government in connection with its investigation of price fixing in the shopping cart industry; give the date or dates of each interview; and identify each document describing the nature, substance or content of the interview.[2]

Defendants' grand jury secrecy objection is grounded upon Rule 6(e), F.R.Crim.P., and the recent decision of the Supreme Court in *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), and its progeny. De-

1. Interrogatory 15 asked each defendant to:
   "Identify by name each person who testified before 'The Grand Jury' and for each such person, state:
   a. his or her last known residence and employment addresses, and current employer;
   b. the date or dates on which such person appeared before the Grand Jury;
   c. the name and address of the employer and the employment position held at the time testimony was given to the Grand Jury;
   d. every position held with a defendant, a subsidiary or affiliate of a defendant or any other company and the dates during which each position was held."

2. Interrogatory 19 asked each defendant to:
   "State the name and address of each person who was interviewed or whom you have reason to believe was interviewed by the Government during the course of the Investigation or during the pendency of *U. S. v. Roblin*. As to each such person, state:
   a. his or her name and address, employer and position held at the time of the interview, the identity of each employer and position held during the period, dates during which each such position was held, and if no longer employed by a defendant, the person's current employer and last known residence and employment addresses.
   b. the date each interview took place and the subject matter discussed;
   c. the name, address and employer of each person present;
   d. the identity of each document describing the nature, substance or content of the interview, and for each document identified state:
   (i) the date the document was prepared;
   (ii) the name and employer of each person who prepared such document, was given the document, shown the document, or informed of the contents of the document;
   (iii) whether you have or had possession of the document or any portions thereof, and if so, identify the name and address of each person who has or had possession and the dates during which each person had possession.
   e. the name, address and employer of each person who was informed of the interview."

fendants' basic claim is that Rule 6(e) articulates the long established policy of secrecy surrounding grand jury proceedings and that *Douglas Oil* rearticulated this policy and "reaffirmed the requirement that the party seeking disclosure of grand jury matters must demonstrate 'particularized need' before the information sought can be revealed." (Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel Discovery, docketed February 8, 1982 (hereinafter Defendants' "Memo in Opposition") at 4. See generally, 8 Moore's *Federal Practice* ¶ 6.05, *et seq.* The defendants have assumed therefrom that since there is a policy of secrecy surrounding grand jury proceedings, that policy must also protect the secrecy of the names of grand jury witnesses, the names of those interviewed by the Government in the course of its criminal investigation, and any corporate documents discussing the interviews. Defendants have misread Rule 6(e) and misinterpreted the case law.

Rule 6(e) provides that:

"A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under [the government personnel exception] shall not disclose matter occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule."

By its terms, it is evident that this Rule itself does not prohibit the corporate defendant in a criminal proceeding or in a separate civil proceeding, or its attorney, from disclosing any information it has about the grand jury proceedings.

The case law surrounding "grand jury secrecy" involves three distinctly different types or categories of grand jury related information, each with its own protections and problems.

The first category deals with the availability of grand jury testimony through release of the actual transcripts or the deposition of the reporter, grand juror or attorney. *E.g., United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958) ("long established policy of maintaining secrecy of the grand jury proceedings in federal courts"); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959) (this "policy" is "older than the nation itself").

Defendants place much weight on the decision of the Supreme Court in *Douglas Oil, supra*, however, it is evident from that decision that the Court was *only* considering issues within this first category, the disclosure of grand jury transcripts and materials:

"... two intertwined questions concerning a civil litigant's right to obtain transcripts of federal criminal grand jury proceedings. First, what justification for disclosure must a private party show in order to overcome the presumption of grand jury secrecy applicable to such transcripts? Second, what court should assess the strength of this showing—the court where the civil action is pending, or the court that acts as custodian of the grand jury documents?" 441 U.S. at 213, 99 S.Ct. at 1669 [footnote omitted].

The Court's opinion simply reaffirmed the "particularized need" standard that applies to the disclosure of grand jury transcripts first enunciated many years earlier in *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) and *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959). The Court spelled out the balancing test to be conducted in determining whether transcripts are to be disclosed and set forth the proper procedure for judicial determination of these issues when the grand jury transcripts are in the "custody" of a different district court than the court in which the civil action is pending.

The interrogatories involved here do not seek the transcripts of the grand jury testimony or the substance of that testimony through the deposition of the prosecutor,

reporter, or a member of the grand jury. Accordingly, neither *Douglas Oil* nor the other cases cited by the defendants which deal with grand jury transcripts are dispositive of this issue.[3]

Furthermore, it appears to this Court that *Douglas Oil* in fact *supports* the disclosure of the information sought in interrogatories 15 and 19. Implicit throughout the *Douglas Oil* decision is the requirement that applicants for grand jury transcripts present the court with a strong factual foundation favoring disclosure. In order to lay such a factual foundation, the applicant must know the names of the grand jury witnesses, which leads us to the second category. *Douglas Oil, supra* at 218–23, 99 S.Ct. at 1672–75.

The second category or type of grand jury related information involves requests for the names of grand jury witnesses, background information identifying those witnesses and their employment history, and the date or dates of their appearance before the grand jury. These requests have principally taken the form of interrogatories directed at the parties to a civil lawsuit who were the targets of the original grand jury investigation. Neither these suits nor the interrogatories have involved the Government, and this information is sought subsequent to the grand jury investigation. *E.g., In Re: Glassine and Greaseproof Paper Antitrust Litigation*, Master File No. 80–914 (E.D.Pa., Aug. 20, 1981) (opinion ordering answers to category two interrogatories).

This type of interrogatory represents a routine inquiry to be directed at defendants in complex antitrust cases. The *Manual for Complex Litigation* (Vol. 1, Pt. 2 Moore's *Federal Practice*) (2d ed. with 1981 supplements), Appendix § 2.00(A)(6) approves a comparable interrogatory:

"Identify each person employed by you or who acted for you who was a witness before the Grand Jury of the United States District Court for the .... District of ...... which in 19 .. returned an indictment charging a combination and conspiracy in violation of Section .... of the ........ Act with respect to the product defined in the complaint.

All of the cases which deal with requests for category two materials directed at civil defendants clearly support the propriety of these requests. For example, Judge Weinstein in three cases which were later consolidated within the *Wiring Device Antitrust Litigation* ordered that:

"Defendants shall furnish the names, titles and addresses of those who appeared before the Grand Jury and make available for inspection and copying documents presented to the Grand Jury, if a copy was kept by defendants and the document is related to wiring devices ...." *Big D Building Supply Corp. v. Leviton Mfg. Co.*, 77 Civ. 2167–JBW (E.D.N.Y. Jan. 10, 1978) at ¶ 4 (Ex. B(i) to Plaintiff's Notice of Motion docketed October 29, 1981).

The Judicial Panel on Multidistrict Litigation referred favorably to Judge Weinstein's order in its decision to consolidate the cases before Judge Weinstein. *In Re Wiring Device Antitrust Litigation*, [1978–1] CCH Trade Cas. ¶ 61,891 (Judicial Panel on Multidistrict Litigation, Feb. 17, 1978).

---

**3.** Defendants' Memorandum in Opposition cited the following cases which deal with disclosure of grand jury transcripts and materials: *United States v. Sobotka*, 623 F.2d 764 (2d Cir. 1980) (district court could have achieved desired result merely by ordering disclosure of grand jury witnesses names and implies this would have been acceptable, see p. 768); *Index Fund, Inc. v. Hagopian*, 512 F.Supp. 1122 (S.D. N.Y.1981) (disclosure of grand jury materials was sought by SEC; it was permitted to go through files); *In Re: Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24 (2d Cir. 1981) (grand jury minutes and documents not re-

leased without showing of "particularized need"); *In Re State of Illinois Petition to Inspect and Copy Grand Jury Materials*, 659 F.2d 800 (7th Cir. 1981) (same); *Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856 (D.C.Cir.1981) (FOIA request for grand jury materials denied without showing of "particularized need"); *ABC Great Stores, Inc. v. Globe Ticket Co.*, 309 F.Supp. 181 (E.D.Pa.1970) (only testimony sought); *State of Minn. v. United States Steel Corp.*, 44 F.R.D. 559 (D.Minn.1968) (discovery of names of witnesses known to defendants permitted).

Judge Weinstein later applied his earlier order to all of the *Wiring Device* cases. *In Re Wiring Device Antitrust Litigation*, MD. No. 331 (E.D.N.Y. March 18, 1981) at 11 (Pre-Trial Order No. 1, Ex. B(ii) to Plaintiff's Notice of Motion).

All other decisions and orders known to this Court relating to category two disputes are to the same effect. *See, e.g., In Re Standard Screws Antitrust Litigation*, MDL No. 443 (D.Mass., Dec. 15, 1980) (Caffrey, J.) (Ex. B(iii) to Plaintiff's Notice of Motion); *Metropolitan Sanitary Dist. of Greater Chicago v. Martin Marietta Corp.*, Civ. No. 67 C 684 (N.D.Ill., March 15, 1968) (7 Judge Coordinating Committee) (see Plaintiffs' Reply Memorandum at 4 and Ex. D); *In Re Corrugated Container Antitrust Litigation*, MDL No. 310 (S.D.Tex., Nov. 13, 1978) (Pre-Trial Order No. 30) at ¶ 2 (Plaintiffs' Reply Memorandum in Support of Motion to Compel Discovery filed Dec. 18, 1981 at 3 and Ex. A); *Axelrod v. Saks & Co.*, Civ. No. 76–3805 (E.D.Pa., Aug. 22, 1978) (see Plaintiffs' Reply Memorandum at 2); *Philadelphia Elec. Co. v. Anaconda American Brass Co.*, Civ. No. 41734, E.D.Pa., Aug. 2, 1967) (see Ex. C to Plaintiff's Reply Memorandum).

The third category relates to interrogatories seeking information from a civil defendant as to the names of persons interviewed by the Government in connection with an investigation and the identification of corporate documents discussing those interviews. Although there is little case law on this category, it is clear to this Court that this category must be treated in the same manner as the second category because it also involves information of a peripheral nature to the actual investigation made by the grand jury and because it seeks information already in the possession of a civil defendant.

This type of interrogatory is also considered to be a typical question to be directed at defendants in large antitrust cases. The *Manual for Complex Litigation* (Vol. 1, Pt. 2 Moore's *Federal Practice* ) (2d ed. with 1981 supplements) Appendix § 2.00(A)(4) provides a suggested format for just such an interrogatory:

"Identify each person employed by or who acted for you who testified before any agent, agency or committee of the executive or legislative branch of the United States or of any state or who submitted any written document or statement, data or report to such agent, agency or committee in connection with any investigation of alleged unlawful pricing or alleged unlawful marketing agreements affecting the product defined in the complaint."

The only opinion or order directly dealing with category three issues, seeking the names of persons who were interviewed by the Government and corporate documents discussing the interviews, was in the *Corrugated Container* litigation and it ordered the questions to be answered. Judge Singleton stated:

"When they [defendants] are talking about [the identification of] the witnesses who were interviewed ... or debriefed concerning his testimony, I don't see that the answers to those questions go to a violation of the secrecy provisions of Rule 6 or any of the case law." *In Re Corrugated Container Antitrust Litigation*, MDL No. 310 (S.D.Tex., Nov. 7, 1979) (see Plaintiffs' Reply Memorandum at 3).

Judge Singleton's subsequent order was to the same effect. *In Re Corrugated Container Antitrust Litigation*, MDL No. 310 (S.D.Tex., Nov. 13, 1979) (Pre-Trial Order No. 30) (see Ex. A to Plaintiffs' Reply Memorandum).

An analogy to disputes as to disclosure of information in categories two and three exists in the context of the attorney-client and work product privileges. In these areas, it is well established that questions designed to elicit the existence or identity of documents or the parties to a communication do not call for protected information; only when the actual content of the communication is requested could the issue of privilege, or here, the issue of secrecy, arise. 4 Moore's *Federal Practice* ¶ 26.58; *In Re Fish & Neave*, 519 F.2d 116, 119 (8th Cir. 1975) (must have sufficient information

about documents to argue against their being privileged); *McCall v. Overseas Tankship Corp.*, 16 F.R.D. 467, 469 (S.D.N.Y. 1954) (Bondy, J.) (privilege does not apply to information sought about whether there was privileged information contained within documents sought, identification of documents and names of potential trial witnesses permitted).

▪ In addition, it must be emphasized that plaintiffs have not sought any information from the Government, they only seek information already known to the corporate defendants who were the targets of the grand jury investigation. Cases involving requests aimed at the Government are therefore not relevant to the instant dispute.[4] Since these interrogatories seek information already in the possession or control of the corporate defendants in this action or their current employees, the public policy aspects of the "secrecy" barrier are inapplicable. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 n. 13, 99 S.Ct. 1667, 1674 n. 13, 60 L.Ed.2d 156 (1979); *State of Illinois v. Sarbaugh*, 552 F.2d 768, 775 (7th Cir. 1977).

When, as here, all defendants were exposed to the allegedly protected grand jury materials, "any protective cloak disappeared." *LaMorte v. Mansfield*, 438 F.2d 448, 452 (2d Cir. 1971) (disclosure of transcript of SEC testimony destroys protective cloak). Notions of "grand jury secrecy," therefore, no longer protect this information and disclosure should be granted. *In Re Sugar Antitrust Litigation*, [1977–2] CCH Trade Cas. ¶ 61,808 (N.D.Cal., Dec. 22, 1977). *See State of Illinois v. Sarbaugh, supra* at 776 (unfair to permit one side to have exclusive access to storehouse of information); *U. S. Industries Inc. v. United States District Court*, 345 F.2d 18, 23 (9th Cir. 1965); *In Re Sugar Industry Antitrust Litigation*, [1976–1] CCH Trade Cas. ¶ 60,-934 (N.D.Cal.1976).

As discussed above, it is evident that plaintiffs' interrogatories are permissible and do not violate the policy affecting "grand jury secrecy." Accordingly, no showing of a "particularized need" is required.

*Interrogatories 15, 19, 27, 28, 35, 52 and 53—Attorney-Client Privilege and Joint Defense Privilege*

As to each individual interrogatory, defendants also assert a blanket objection "to the extent that it attempts to compel them [defendants] to disclose the contents of confidential communications between attorney and client or among attorneys engaged in the joint defense." (Ex. A to Plaintiffs' Notice of Motion filed Oct. 29, 1981 [hereinafter "Plaintiffs' Notice of Motion"]).

▪ Such a blanket claim of privilege is improper. The extent to which any conversation or document is privileged must be determined on an individual case-by-case basis and not based on a blanket assertion by the party claiming the privilege. The burden is on the party claiming the privilege to present the underlying circumstances or facts demonstrating the existence of the privilege to the court. *Leumi Financial Corp. v. Hartford Accident & Indemnity Co.*, 295 F.Supp. 539, 544 (S.D.N.Y.1969). See 4A Moore's *Federal Practice* ¶ 33.27 n. 23 and accompanying text. More specifically,

> "the party must supply the court with sufficient information from which it could reasonably conclude that the communication: (1) concerned the seeking of legal advice; (2) was between a client and an attorney acting in his professional capacity; (3) was related to legal mat-

---

4. In each of the following cases cited in the briefs in this action, the dispute involved requests for information, transcripts or documents directed at the Government: *Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856, 869 (D.C.Cir.1981); *State of Minnesota v. United States Steel Corp.*, 44 F.R.D. 559 (D.Minn. 1968); *United States v. B. F. Goodrich Co.*, [1978–2] CCH Trade Cas. ¶ 62,389 (N.D.Ill. 1978); *In Re Grand Jury Investigation of Uranium Industry*, [1978–2] CCH Trade Cas. ¶ 62,-329 (D.D.C.1978); *In Re Sugar Antitrust Litigation*, [1977–2] CCH Trade Cas. ¶ 61,808 (N.D. Cal.1977); *In Re Folding Carton Antitrust Litigation*, MDL No. 250 (M.D.Ill., May 10, 1977) (Pre-Trial Order No. 14).

ters; and (4) is at the client's instance permanently protected." *Federal Trade Commission v. Shaffner*, 626 F.2d 32, 37 (7th Cir. 1980).

See *Radiant Burners, Inc. v. American Gas Association*, 320 F.2d 314, 319 (7th Cir. 1963). Defendants have failed to provide this information even though the instructions to plaintiffs' interrogatories specifically requested the basis for any claims of privilege.[5]

Insofar as defendants claim that the information sought by these interrogatories is protected as a confidential communication between attorney and client, or as information obtained from attorneys for other defendants in the furtherance of a joint or common defense,[6] it must be remembered that these interrogatories were directed at the corporate defendants and not to their attorneys. As the Supreme Court has recently stated:

"The privilege only protects disclosure of communications [between attorney and client]; it does not protect disclosure of the underlying facts by those who communicated with the attorney .... 'The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but he may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.'" *Upjohn Co. v. United States*, 449 U.S. 383, 395–96, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584 (1981), *quoting Philadelphia v. Westinghouse Elec. Corp.*, 205 F.Supp. 830, 831 (E.D.Pa.1962).

■ Simply because the defendants provided this information to their attorneys or because one attorney told it to another does not relieve the defendants of the obligation to provide this information to other parties in response to interrogatories. *Id. See also, General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1210–11 (8th Cir. 1973), *cert. denied* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). To the extent that these interrogatories sought facts or information within the knowledge of the defendants and not facts or information obtained by the defendants *solely* from their attorneys, the interrogatories were proper and must be answered. Should it turn out that any information actually was derived by the defendants solely from communications between attorney and client or between the attorneys for more than one defendant, then, as discussed above, the burden is on the party claiming the privilege to present the underlying facts demonstrating the existence of the privilege without disclosing the actual contents of the communication.

■ Defendants assert a related objection to interrogatory 28, seeking a description of meetings and communications concerning shopping cart prices, on the ground that it "seeks to compel disclosure of documents prepared in anticipation of litigation." (Ex. A to Plaintiffs' Notice of Motion). This objection is without merit. As discussed above, defendants have the burden of establishing that any requested information is protected. They have not attempted to do so beyond this unspecific and generalized objection. Defendants must answer the interrogatory or specify the basis for the objection, and the items of work product involved.

---

**5.** Instruction number four to Plaintiffs' Joint Interrogatories provided:

"To the extent any interrogatory is objected to, set forth all reasons therefor. If you claim privilege as a ground for not answering any interrogatory in whole or in part, describe the factual basis for your claim of privilege, including relevant dates and persons involved, in sufficient detail so as to permit the court to adjudicate the validity of the claim. If you object in part to any interrogatory, answer the remainder completely."

**6.** "Communications among attorneys for co-defendants are privileged only if the communications are designed to further a joint or common defense." *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 564 (S.D.N.Y.1977). *See Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977); *Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965); *Matter of Grand Jury Subpoena Duces Tecum Dated Nov. 16, 1974*, 406 F.Supp. 381, 389, 391 (S.D.N.Y.1975).

*Interrogatories 27, 28, 52 and 53—Information More Properly Sought by Deposition.*

Interrogatory 27 requests the identification of meetings or communications involving another defendant or a competitor discussing prices and price related items for shopping carts.[7] Interrogatory 28 seeks identifying information relating to the price discussion in Interrogatory 27: date, means of communication, place, participants, subject matter, substance, actions taken as a result, and documents relating thereto.[8] Interrogatory 52 requests the identification of any efforts to conceal any communications with other defendants or competitors.[9] Interrogatory 53 seeks similar identifying information relating to the efforts to conceal in Interrogatory 52.[10]

■ Defendants object to each of these interrogatories "on the ground that the information requested is more properly sought by means of deposition." (Ex. A to Plaintiffs' Notice of Motion).

These interrogatories are of the sort typically permitted in large antitrust cases. *E.g., Manual for Complex Litigation* (Vol. 1, Pt. 2 Moore's *Federal Practice,* 2d ed.) Appendix § 2.00(A); *In re Folding Carton Antitrust Litigation,* 76 F.R.D. 417, 418–19 (N.D.Ill.1977); *In re Folding Carton Antitrust Litigation,* 76 F.R.D. 420, 425–26 (N.D. Ill.1977). They seek information necessary to identify all events and individuals involved in alleged price fixing and efforts to conceal price fixing, which information is basic to this lawsuit.

Providing this information by interrogatories may effect judicial economy and economic savings to the parties. Plaintiffs will know whom they have to depose; unnecessary depositions may be avoided; information which might not be obtained by deposing a few individuals may be obtained from the corporate defendants; important conversations, communications and documents

**7.** Interrogatory 27 asked each defendant:
"Identify each meeting, communication, or contact, directly or indirectly, between one or more of your officers, agents or employees and one or more officers, agents or employees of any competitor or defendant where there was any mention made of actual, proposed, suggested or recommended prices, price increases or decreases, price levels, bids to customers, customers, discounts, allowances, special discounts, rebates, bids, territories concerning shopping carts or other terms or conditions of sale for shopping carts in the United States."

**8.** Interrogatory 28 asked each defendant:
"For each meeting, communication or contact identified above, identify each officer, employee, defendant or competitor attending each meeting or making such communication or contact and state separately with respect to each meeting, communication or contact:
a. The date when it took place;
b. The medium of communication (e.g., telephone, correspondence, etc.);
c. The place, if any, where it took place;
d. The identity of each person involved or participating and the identity of each person who initiated, called or organized the meeting, communication or contact;
e. The subject matter;
f. The substance, in detail, of the meeting, communication or contact;
g. Every action taken by you as a result of the meeting, communication or contact; and

h. The identity of each document recording, referring, or relating to each such meeting, communication or contact, specifically stating which document relates to which meeting, communication or contact."

**9.** Interrogatory 52 asked each defendant:
"Have any of your officers, agents, employees or persons acting or purporting to act on your behalf agreed not to divulge or disclose or taken steps to conceal the existence of any communication with any other defendant or competitor, or the purpose of the communication, or the identity of the participants in the communication."

**10.** Interrogatory 53 asked each defendant:
"If the answer to Interrogatory 52 is anything other than an unqualified negative, with respect to each such communication which was concealed, state or identify:
a. The date of any participation in the communication;
b. The substance of what was said in the communication;
c. The steps taken to conceal the existence of the communication;
d. All persons claiming to have knowledge of the communication or concealment;
e. All documents relating or referring to the communication or steps taken to conceal the existence of communication;
f. Set forth the circumstances of any agreement not to disclose or divulge any such communication."

will be highlighted; delay may be avoided; and the issues for trial may be narrowed.

Defendants proffer depositions of numerous employees, with the attendant travel expense and unnecessary delay. The information requested relates directly to meetings and communications among the defendants and other competitors and is within the possession or control of defendants. If no such conversations or meetings took place, defendants can merely say so, if any took place they need only identify the conversations, meetings and related documents. Should depositions be required in order to obtain this information, a number of wasteful formal depositions of employees who were or may have participated would be necessary.

These interrogatories are within the scope of reasonable discovery, and they are not unduly burdensome. That defendants may incur some burden or expense in answering these interrogatories is not a valid objection where the information sought is relevant and material. *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 25–26 (S.D.N.Y.1966); 4A Moore's *Federal Practice* ¶¶ 33.20, 33.27. Defendants will be required to incur much of this expense and do this research in any event in preparation for trial. *United States v. NYSCO Laboratories, Inc.*, 26 F.R.D. 159, 162 (E.D.N.Y. 1960); *Erone Corp. v. Skouras Theatres Corp.*, 22 F.R.D. 494, 498 (S.D.N.Y.1958). Defendants' claim that this information should be obtained by deposition rather than by interrogatory is not convincing.

Defendants have also objected to some of the interrogatories on the ground that, "to answer [them] would require defendants to conduct interviews of employees concerning alleged activities which were the subject of an action in which certain corporations and others were accused of the commission of a crime. Compiling answers might therefore raise serious and substantial questions relating to the constitutional and other rights of employees." (Ex. A to Plaintiff's Notice of Motion).

We can only assume that defendants are referring obliquely to their employees' possible right against self-incrimination under the Fifth Amendment.

■ It is well established that corporations have no Fifth Amendment right against self-incrimination. *Campbell Painting Corp. v. Reid*, 392 U.S. 286, 288–89, 88 S.Ct. 1978, 1979–80, 20 L.Ed.2d 1094 (1968). Accordingly, they attempt to rely on the rights of their individual employees. A Fifth Amendment right is, however, personal and may not be asserted vicariously. *Couch v. United States*, 409 U.S. 322, 328, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973); *United States v. Passman*, 465 F.Supp. 736, 743 (W.D.La.1979); *In Re Folding Carton Antitrust Litigation*, 76 F.R.D. 417, 419 (N.D.Ill.1977). Defendants lack standing at least at this stage to assert any rights of their employees. *United States v. Cedrone*, 400 F.Supp. 1203, 1206 (W.D.N.Y.1975); *Casson Const. Co. v. Armco Steel Corp.*, 91 F.R.D. 376 [1980–2] CCH Trade Cas. ¶ 63,-369 at 75,878 (D.Kan.1980). In short, the Fifth Amendment here is not a proper objection. *In Re Folding Carton Antitrust Litigation*, 76 F.R.D. at 419.

*Interrogatory 35—Relevance and Confidentiality*

■ Interrogatory 35 seeks financial information from the defendants as to their sales and profits.[11] The defendants and

---

11. Interrogatory 35 asked each defendant:

"(a) For each year during the period,
(i) state the dollar amount of your sales, profit (loss);
(ii) state the dollar amount of your sales, profit (loss) due to sales of shopping carts.
(b) For each year during the period identify, by type, date and name and address of the author, each document, other than invoices and similar transactional documents:

(i) reflecting sales, profit, (loss) or your company;
(ii) reflecting sales, profit, (loss) due to sales of shopping carts.
(c) For each year during the period,
(i) state the sales profit (loss) of any other person or company selling, manufacturing or distributing shopping carts and identify the person or company; and

plaintiffs agree that this information is relevant and discoverable, however, defendants Gleason and Technibuilt do not agree as to when such discovery should be required. Defendants Roblin, Unarco and ToteCart have agreed to provide the requested information for the period of January 1, 1968 through December 31, 1980. Defendants Gleason and Technibuilt, which are jointly represented, object to the period after December 31, 1977. They argue that the request is vague and overbroad and that the purported conspiracy ended no later than 1977 and therefore financial information after December 31, 1977 is irrelevant. (Defendants' Memorandum in Opposition at 16).

Plaintiffs argue that the Government indictment alleges that the conspiracy continued until "at least" 1977 and the Unified and Consolidated Complaint in this action alleges that the effect of the conspiracy continued "at least until September, 1980 . . . ." (Complaint, ¶ 15). Plaintiffs also argue that this information is necessary, *inter alia*, as proof of damages by providing a comparison between performance of the defendants during and after the conspiracy.

The rule is that, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter . . . if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), F.R.Civ.P.

If an economically effective price conspiracy takes place over a long period of time and the industry suddenly becomes competitive, then ordinarily sales and profits of individual companies will change suddenly. A dramatic and sudden change might tend to indicate that a conspiracy did exist. The data will also provide plaintiffs with information relevant to damages. Plaintiffs are entitled to obtain such information through their interrogatories. *In Re Folding Carton*

*Antitrust Litigation*, 83 F.R.D. 251, 254, 55 (N.D.Ill.1978); *United States v. International Business Machines Corp.*, 66 F.R.D. 180, 185–86 (S.D.N.Y.1974); *Erone Corp. v. Skouras Theatres Corp.*, 22 F.R.D. 494, 499 (S.D.N.Y.1958); *Trans World Airlines, Inc. v. Hughes*, 29 F.R.D. 523, 524 (S.D.N.Y. 1961).

Defendants Gleason and Technibuilt also state that they object "to supplying other defendants with the sensitive, confidential information." (Defendants' Memorandum in Opposition at 16). The fact that "discovery might result in the disclosure of sensitive information is not a basis for denying such discovery." *Estate of LeBaron v. Rohm and Haas Co.*, 441 F.2d 575, 577 (9th Cir. 1971) (3 Judge Panel, per curiam). If defendants desire, they may submit a protective order on consent, or on five (5) days notice of settlement, which will obviate this perceived problem.

Defendants shall answer all of the aforementioned interrogatories within thirty (30) days from the date hereof.

So Ordered.

(iii) (sic) identify all documents referring or relating to the sales, profit (loss) or any other person or company selling, manufacturing or distributing shopping carts.

    (d) For each year during the period,

    (i) state your costs for each model of shopping carts, identifying each different cost factor; and

    (ii) identify documents sufficient to allow plaintiffs to determine the costs of each different model of shopping carts you sold."