**PROFESSIONAL ADJUSTING SYSTEMS OF AMERICA, INC., et al., Plaintiffs,**

v.

**GENERAL ADJUSTMENT BUREAU, INC., Defendant.**

**No. 72 Civ. 5122.**

United States District Court, S. D. New York.

April 9, 1974.

———◆———

David Berger, H. Laddie Montague, Jr., Joel C. Meredith, Paul J. McMahon, Philadelphia, Pa., and Carrow, Bernson, Hoeniger, Freitog & Abbey, New York City, for plaintiffs by Arthur N. Abbey, New York City, of counsel.

Shearman & Sterling, New York City, for defendant by Robert F. Dobbin and Clarence W. Olmstead, Jr., New York City, of counsel.

GURFEIN, District Judge:

This is a motion by plaintiffs to compel answers to interrogatories and the production of documents.

The action is brought by a franchisor or trade association of independent insurance adjusters, Professional Adjusting Systems of America, Inc. ("PASA"), and two independent insurance adjusters, Solberg Adjustment Company ("Solberg") and Free State Adjusting Company ("Free State") to recover for alleged violations of Section 1 of the Sherman Act. Defendant General Adjustment Bureau, Inc. ("GAB") is a corporation primarily engaged in the business of providing insurance loss and claim adjustment services, representing property and casualty insurance companies. From 1932 until the date of the complaint in this action (the "PASA action"),* GAB's stock was owned by insurance companies.

Specifically the complaints in the two actions allege that during the period from 1930 to 1971 GAB and certain unnamed co-conspirators, including its shareholders, engaged in a combination and conspiracy, pursuant to which they did the following:

(a) Caused shareholders to utilize GAB's facilities for adjustment and settlement of claims;

(b) Caused shareholders to boycott independent adjusters;

(c) Caused shareholders to coerce and intimidate agents to channel claims to GAB;

(d) Caused shareholders to adhere to GAB's assessment billing schedule in dealing with independent adjusters;

(e) Formulated uniform price lists for labor and material used in the repair and replacement of damaged property; and

(f) Established uniform practices and procedures to be used in the adjustment and settlement of claims.

The present motion deals with interrogatories 8 through 16, 17, 20–22; 29–32; 42; 44 and 45.

*Preliminarily, Re: the Time Period*

■ These two actions were commenced in April 1972. The plaintiffs

---

* A substantially identical action, Chambers & Barber, Inc. v. General Adjustment Bureau, Inc., D.C., 60 F.R.D. 455 (M.I.G.) (the "C&B action") has been consolidated with this action for pretrial purposes. The sole plaintiff in the C&B action, Chambers & Barber, Inc. ("C&B") is an independent insurance adjuster.

seek information with respect to each of their interrogatories going back to April 15, 1952. The defendant contends that it would be burdensome to require these interrogatories to be answered for a period longer than twice the statute of limitations. See Austin Theatre, Inc. v. Warner Bros. Pictures, Inc., 30 F.R.D. 156 (S.D.N.Y.1958); Stanzler v. Loew's Theatre and Realty Corp., 19 F.R.D. 286, 298 (D.R.I., 1955). The applicable statute of limitation in Section 4B of the Clayton Act (15 U.S.C. § 15b) is four years. Plaintiffs contend quite plausibly that since they have alleged there was a concealment of the conspiracy, the statute of limitations may well have been tolled for a considerable number of years. See Atlanta City Electric Co. v. General Electric Co., 312 F.2d 236 (2 Cir. 1962); United States and Tennessee Valley Authority v. General Electric Co., 209 F. Supp. 197 (E.D.Pa.1962). This, however, requires proof, and for the time being, although from the nature of the conspiracy it would seem to be correct, that is an insufficient reason for not weighing the burdens which such extensive discovery would entail.

Since this is the first wave of discovery, I am holding, as a practical matter, that the interrogatories which are to be answered as stated in this memorandum are to cover the period from January 1, 1964. If further discovery reveals a need for additional background information or indeed substantive information based on a tolling of the statute of limitations, the plaintiff may make further request for such additional information.

*Preliminarily, Re: the Geographic Area*

■ The plaintiffs' interrogatories seek information on a nationwide basis. The actual plaintiffs, however, do business in limited areas of the nation. Although the plaintiffs allege in their complaint that they are suing as a class on behalf of all others similarly situated, the matter of the class action determination is not yet *sub judice.* Accordingly,

at this stage of the discovery the interrogatories will be limited to applicable documents in the main office of GAB in New York and in those branch offices which service the areas in which the named plaintiffs do business. See Austin Theatre, Inc. v. Warner Bros. Pictures, Inc., supra; Konczakowski v. Paramount Pictures, Inc., 20 F.R.D. 588, 592 (S.D.N.Y.1957). Cf. Continental Ore Co. v. Union Carbide Corp., 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962), where the plaintiff sought to compete in the areas in dispute; and cf. Natcontainer Corp. v. Continental Can Co., 362 F.Supp. 1094, 1102 (S.D.N.Y.1973), where the plaintiff competed with the defendant on a nationwide basis.

This is without prejudice to an extension of the geographic area for discovery, if later the action should be declared to be a class action or if other facts develop suggesting the propriety of extending the geographic area for discovery purposes. Turning now to the specific interrogatories in the light of the above restrictions, my rulings are as follows:

*8 through 16*

■ Interrogatories 8 through 16 seek (a) information as to the criteria for becoming a shareholder of GAB and (b) information as to restrictions placed on the transfer or disposition of GAB stock. The complaint alleges in essence that GAB and the co-conspirators, including GAB's shareholders, caused GAB shareholders to utilize GAB to the exclusion of independent adjusters, caused GAB shareholders to adhere to GAB's assessment billing schedule in dealing with independent adjusters, formulated uniform price lists, and established uniform practices and procedures.

These interrogatories are designed to obtain information concerning the criteria, if any, which GAB established for becoming a shareholder, the enforcement of any such criteria, and the restrictions on sale or transfer of GAB stock.

The complaint alleges that there was a conspiracy between GAB and the companies which were its shareholders. It seems to be relevant to find the criteria of admission to shareholding and the use of GAB's facilities in adjusting insurance claims. The answers could well lead to admissible evidence.

The defendant has already agreed to answer 16(b).

### Interrogatory 17

"Identify all routine correspondence with GAB shareholders."

Plaintiffs have disavowed seeking "correspondence relating to the adjusting of individual insurance claims." They will be allowed discovery of "routine correspondence" with GAB shareholders contained in the four drawers of the main office of GAB as described in the affidavit of H. Warren Russell. When this wave of discovery is finished, the plaintiffs may seek further discovery in this category upon a proper showing of relevance.

### 20–22

█ These interrogatories ask whether GAB has ever required a nonshareholder to use its services exclusively, and whether it ever refused its services to nonshareholders and why.

I think these are generally relevant interrogatories, at least at this stage, to give a picture of the operation that could lead to admissible evidence on plaintiffs' claims. They should be answered.

### 29–32

█ These interrogatories ask for information about meetings between GAB, its shareholders and others during which topics such as lost business to independents, coercion by shareholders to intimidate agents to channel business to GAB, the establishment of uniform price lists and uniform practices and procedures to be used in connection with claims adjusting were discussed.

The defendant contends that the assumption that this is "relevant matter" is premature. I agree the words "relevant matter" should be deleted. I do not think that "meetings" should be limited to *formal* meetings, however, as suggested by the defendant.

I will delete Interrogatory 29(a)(ii) and (iii), at least for the time being. I will also limit the conversations to those conversations with shareholders in which a director or officer of GAB participated. It is simply too burdensome to require every conversation by every GAB employee with respect to these topics to be identified.

I will not allow Interrogatory 32 at this time because it is too extensive in a first wave of discovery.

### 42

█ I do not believe that in this wave of discovery this interrogatory asking GAB to identify all documents which describe how GAB's assessment billing schedule is prepared is necessary. After preliminary deposition of appropriate witnesses, the request may be renewed.

### 44 and 45

█ These interrogatories seek the identification of documents reflecting communications between GAB and independents. It is too broad. If the plaintiffs can list relevant subject-matter, I will entertain a motion to compel answers in the next wave of discovery. On the other hand, the defendant should *now* identify booklets and pamphlets sent from or to independent adjusters relating to the GAB claim adjustment service.

### 56

█ This interrogatory asks GAB to state its document retention policy and to identify documents which reflect such policy. This will be helpful in the planning of discovery and is a proper request in the first wave of discovery. It should be answered.

It is so ordered.