BOARD OF EDUCATION OF EVANS-
TON TOWNSHIP HIGH SCHOOL DIS-
TRICT NO. 202, COOK COUNTY, ILLI-
NOIS, et al., Plaintiffs,

v.

ADMIRAL HEATING AND
VENTILATING, INC., et
al., Defendants.

BOARD OF EDUCATION OF TOWN-
SHIP HIGH SCHOOL DISTRICT NO.
205, COOK COUNTY, ILLINOIS, et al.,
Plaintiffs,

v.

BORG, INC., et al., Defendants.

STATE OF ILLINOIS, et al., Plaintiffs,

v.

BORG, INC., et al., Defendants.

Nos. 79 CH 3046, 79 CH 3077 and
79 CH 5253.

United States District Court,
N.D. Illinois, E.D.

Oct. 12, 1984.

24

Marcia E. Doane, Cowen, Crowley & Hager, Chicago, Ill., for plaintiffs.

Michael A. Forti, Bell, Boyd & Lloyd, Claudia J. Lovelette, Burke, Bosselman, Freivogel, Weaver, Glaves & Ryan, Mark S. Lieberman, Rosenthal & Schanfield, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

These three class actions charge various piping construction companies and individuals with bid-rigging, price-fixing and job allocation in the Chicago area from 1956 to 1977. Plaintiffs have moved (via their "Motion") under Fed.R.Civ.P. ("Rule") 37 for an order compelling defendants to answer Rule 33 interrogatories and to produce documents in compliance with a Rule 34 request. For the reasons stated in this memorandum opinion and order, the Motion is granted in part and denied in part.

### Background

In October 1979 plaintiffs served defendants with a set of interrogatories ("First Set" or "Ints. I," Pl.Ex. A) and a set of requests for documents ("Requests" or "Reqs.," Pl.Ex. B). Defendants objected to both in their entirety (Pl.Exs. C and D). As this District Court's General Rule 12(d) requires, the parties met on January 8 and February 4, 1980 to resolve their differences. At that time plaintiffs agreed to defer discovery on Ints. I-1, 2, 4, 5 and 6 and Reqs. 8, 12, 13, 14, 16, 17, 18 and 19 (Pl.Ex. E).

In General Rule 12(d) meetings held October 26 and November 1, 1982, the parties reached agreement on amended versions of

Ints. I–1, 2 and 4 and Reqs. 8, 17 and 19 (Pl.Exs. G and H). As to the other discovery items they remained at odds. They did however agree that answers to interrogatories and responses to document requests not otherwise objected to would be tendered within 28 days of the date of delivery to defendants of the typed minutes of the November 1, 1982 meeting (Pl.Ex. H). Those minutes were delivered November 2, 1982, but a number of defendants failed to make the agreed-on discovery within the allotted time and, indeed, have yet to do so. Plaintiffs became occupied with settlement negotiations with various defendants and did not take note of the default until August 8, 1983, when letters were sent to all defaulting defendants asking that they respond within 28 days as provided in the conference minutes.

On March 24, 1983 plaintiffs launched a second wave of discovery, serving separate sets of interrogatories on the corporate and individual defendants ("Second Set" or "Ints. II," Pl.Exs. J and K).[1] While a few of the defendants (see Motion Sch. 1, Pt. C) filed objections to those interrogatories within 30 days after service as Rule 33(a) requires, others (see Motion Sch. 1, Pt. B) did not. In a General Rule 12(d) conference held July 29, 1983 the objecting corporate defendants agreed to answer Ints. II–3, but they have yet to do so. Plaintiffs agreed to modify several of the other interrogatories in an effort to meet certain of the corporate defendants' objections. Those defendants nevertheless continued to oppose all but Int. II–3,[2] and the objecting individual defendants also stood their ground as to the interrogatories put separately to them (Pl.Ex. M).

Based upon that sequence of events, plaintiffs seek a Rule 37 order:

1. compelling defendants in default under the agreement reached at the October 26/November 1, 1982 conference (see Motion Sch. 1, Pt. A[3]) to answer Ints. I–1, 2 and 4 and to produce the documents described in Reqs. 8, 17 and 19;

2. overruling the same defendants' objections to Reqs. 12, 13, 14, 16 and 18 and compelling production;

3. compelling defendants who did not timely respond to the Second Set interrogatories (see Motion Sch. 1, Pt. B) to answer those interrogatories in their original form, any objections having been waived;

4. compelling defendants who did timely object to the Second Set interrogatories and who participated in the July 29, 1983 conference to answer Int. II–3 as they had agreed; and

5. overruling the same defendants' objections to certain other Second Set interrogatories and compelling answers to those interrogatories as amended by the minutes of the July 29 conference.

In addition plaintiffs seek to recover the expenses, including reasonable attorneys' fees, incurred in obtaining the order.

### Interrogatories

A. *First Set*

As to the First Set interrogatories, plaintiffs ask only that defendants honor their agreement to answer Ints. I–1, 2 and 4. In each instance the interrogatories have undergone some evolution.

As originally framed, Ints. I–1 and 2 asked each corporate defendant to identify

---

1. Ints. II comprised 13 interrogatories put to the corporate defendants and 10 put to the individual defendants.

2. Economy Mechanical Industries, Inc. ("Economy") was one of the three corporate defendants who participated in the July 29 conference. Though the other corporate defendants would not go so far, Economy agreed to answer portions of Int. II–2 and the modified version of Int. II–7.

3. After this matter had become fully briefed, plaintiffs discovered defendant Grigus, Inc. ("Grigus") was not in default under the agreement reached at the General Rule 12(d) conference. At plaintiffs' request, Grigus has been struck from Motion Sch. 1, Pt. A. See September 19, 1984 letter of plaintiffs' counsel Marcia E. Doane to this Court.

all present and former directors and officers, as well as any other individual involved in determining the amount of the company's bid on piping construction projects. They also required that defendants set out, if applicable, the reasons for termination of any of the identified individuals' positions with the company. Defendants initially objected that the reasons for an individual's termination were neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. As to nearly all defendants that dispute was resolved, however, at the late 1982 General Rule 12(d) conference by an agreement that defendants would supply the reasons for an individual's termination "if that termination was related to, in whole or in part, the conduct of that person with respect to the provision or non-provision of piping construction, piping supplies or piping services" (Pl.Ex. H).[4]

Int. I–4 originally required each defendant to list all "plants, warehouses, shops, or other places of business" used by the company for storage or work related to piping construction (Pl.Ex. A). Defendants objected to the interrogatory as unduly burdensome, but they agreed at the General Rule 12(d) conference to answer a modified version that excluded job sites from "other places of business" and limited the response to the period 1956 through 1977.[5]

Despite their agreement to answer the interrogatories (as modified) within 28 days after receiving typed copies of the General Rule 12(d) conference minutes, defendants have yet to do so. F.E. Moran, Inc. ("Moran") now argues (Mem. 2) that, according to its understanding, plaintiffs intended to bring the disputed portions of the discovery requests to the court for resolution so all discovery could proceed at once. Moreover, plaintiffs never told defendants they were expecting answers, even though the parties were in touch with each other between November 1982 and August 8, 1983 (when the letters requesting answers were mailed). Indeed nothing was said on the subject when the July 29, 1983 conference on the Second Set interrogatories took place.

Nevertheless, according to the clear terms of the October 26/November 1, 1982 conference minutes, the undisputed portions of the first-wave discovery were to be complied with by November 30, 1982. Even if subsequent events make understandable defendants' failure to meet that deadline, they have no excuse for not responding to the August 8, 1983 letters.

Plaintiffs' motion to compel is granted as to Ints. I–1, 2 and 4, as modified in the General Rule 12(d) conference minutes.[6] For the reasons stated in nn. 4 and 5 the order applies to Economy Defendants too.

## B. Second Set

### 1. Failure To Interpose Timely Objections

■ True enough, as plaintiffs argue, a party's failure within 30 days of service to answer or object to interrogatories or to seek an extension of time or a protective order may constitute a waiver of any objections the party might have, including a claim of privilege. *United States v. 58.16 Acres of Land*, 66 F.R.D. 570, 572 (E.D.Ill. 1975). Accordingly, plaintiffs say, defendants who objected late to the Second Set interrogatories—or who have never done so

---

**4.** As this Court's pretrial procedures permitted, Economy and Elmer Bruksch (collectively "Economy Defendants") opted out of the October 26/November 1 conference and so were not bound by the agreement reached as to Ints. I–1, 2 and 4. Their failure to answer, therefore, does not constitute a default. See Motion Sch. 1, Pt. A. Their Mem. 4 opposing plaintiffs' present motion reasserts their objection to the termination element of Ints. I–1 and 2 as having "no bearing whatsoever on whether the defendants violated the antitrust laws alleged in plain-

tiffs' complaint." To the contrary, this Court determines independently that, as limited, those interrogatories plainly surmount the low threshold of Rule 26(b)(1).

**5.** Economy Defendants' current memorandum gives no indication of a continuing objection to Int. I–4 as so modified.

**6.** National Mechanical Contractors ("National") has already answered Ints. I–1 and 2.

(see Motion Sch. 1, Pt. B)—have no choice but to answer the questions as put.

■ In the usual case the waiver rule helps to give meaning and effect to the discovery rules. See *Davis v. Romney*, 53 F.R.D. 247, 248 (E.D.Pa.1971). But the policy behind the waiver rule does not argue for its application in the circumstances of this case. Plaintiffs served the Second Set interrogatories hard on the heels of the dissolution of the Joint Defense Committee, in the context of ongoing settlement discussions with a number of the defendants. To the extent any defendants' objections were made more than 30 days later, they all came in well before plaintiffs filed their motion to compel (the tardiest of the responses was filed August 11, 1983; plaintiffs' motion was not filed until March 4, 1984). Moreover the larger defendants (whose lead the other defendants had been following throughout the joint defense) did file timely objections. All defendants' interests as to the Second Set interrogatories are very closely related, and their legal arguments are essentially the same.[7] See *Goldy v. Beal*, 91 F.R.D. 451, 456 (M.D.Pa. 1981). In short, the progress of plaintiffs' discovery has not been impeded by the tardy responses of certain defendants.

Any finding of waiver as to those defendants would be an uncalled-for punitive measure.

Somewhat more difficult is the question whether the few defendants who have made no response at all to the Second Set interrogatories should be allowed to ride on the coattails of those who did so in time. To be sure, this Court is not in the habit of protecting parties from the consequences of their own defaults. Nevertheless, there is little point in compelling those defendants to answer all the Second Set interrogatories as originally put. After all, the purpose of the Rules' liberal discovery provisions is to facilitate the open and evenhanded development of the facts underlying a given dispute so that justice may be done on the merits. See *Hickman v. Taylor*, 329 U.S. 495, 500–01, 507, 67 S.Ct. 385, 388, 391, 91 L.Ed. 451 (1947). Plaintiffs here have been no more impaired in the prosecution of their case by the total silence of some few defendants than by the somewhat tardy responses of others.

Consequently this opinion will not apply the sanction of waiver at all. It decides the merits of the Motion as to the Second Set interrogatories [8] as to all defendants, not simply those who filed timely responses.

7. Only three corporate and affiliated individual defendants have filed memoranda opposing plaintiffs' motion: (1) Moran and Owen A. Moran (collectively "Moran Defendants"); (2) Economy Defendants; and (3) National Mechanical Contractors, Inc. ("National") and Harold Hurvitz (collectively "National Mechanical Defendants"). National Mechanical Defendants' Mem. 2 says of the others' briefs:

> The Court has been favored with exhaustive memoranda filed by other defendants addressing the merits of the objections to plaintiffs' pending discovery requests. Since the National Mechanical defendants filed similar objections, it is neither necessary nor helpful to the Court to repeat the arguments and authorities supporting our contentions in this respect.

No doubt the defendants who have not filed memoranda are similarly motivated by a wish to avoid duplication of effort and expense.

8. Plaintiffs agreed to modify several interrogatories at the July 29, 1983 conference (Pl.Ex. M). In each such instance, this opinion deals with the interrogatory as amended. At the same

conference, defendants agreed to answer Int. II–3, which asks each defendant to describe its company policy with respect to the retention and destruction of documents (an entirely reasonable question, particularly in the early stages of discovery: *Professional Adjusting Systems of America, Inc. v. General Adjustment Bureau, Inc.*, 373 F.Supp. 1225, 1229 (S.D.N.Y.1974)). All defendants who participated in the July 29 conference are bound by the conference agreements. And because all defendants who did not participate in the conference—those who did not timely respond to the Second Set—are riding on the coattails of those who did (so far as objections are concerned), they are also bound by the conference agreement to answer Int. II–3. Finally, defendants who did serve timely replies answered Int. II–9, which asks defendants to identify any expert witnesses they expect to call at trial (see Pl.Ex. L). As a result, that interrogatory was not discussed at the July 29 conference and is not discussed in the parties' briefs on the Motion. Just as defendants who did not timely object are bound by the agreement to answer Int. II–3, so too are they bound to answer Int. II–9.

2. *Ints. II–1, 2, 4, 5, 6 and 7 (Corporate Defendants)*

These interrogatories seek basic information about various aspects of defendants' piping construction business between 1956 and the present.[9] Defendants do not argue the information is irrelevant under the standard of Rule 26(b), but rather that the interrogatories are unduly burdensome and an abuse of discovery.[10] They specifically contend (1) answering the interrogatories will require them to undertake a massive and very expensive program of interviews with present and former employees and (2) the information sought by plaintiffs may be more inexpensively obtained through depositions.

 That answering interrogatories "would be burdensome and expensive and would hamper some of the defendants' business operations is not in itself a reason for refusing to order discovery which is otherwise appropriate." *In re Folding Carton Antitrust Litigation*, 83 F.R.D. 251, 255 (N.D.Ill.1978), speaking of production of documents and quoting 4A *Moore's Federal Practice* ¶ 34.19[2], at 34–106. These interrogatories are of the sort typically permitted in large antitrust cases. See, e.g., *Manual for Complex Litigation* Pt. 2, § 2.00 (1981 rev.), 1 (Pt. 2) *Moore's*, at 317 (1982) (hereafter cited *"Manual—*, 1 (Pt. 2) *Moore's*, at—"). They seek to identify the individuals and the events involved

in the alleged bid-rigging and price fixing. See *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 307 (S.D.N.Y.1982). Nonetheless there may be cases where the expense and inconvenience of assembling information requested by interrogatories is not justified by the usefulness of the information. See *Struthers Scientific & International Corp. v. General Foods Corp.*, 45 F.R.D. 375, 379 (S.D.Tex.1968).

 In an effort to meet their burden of showing the interrogatories are burdensome and oppressive, *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D.Pa.1980), defendants assert they would want litigation counsel to carry out the investigation necessary to answer the interrogatories, to guard against the possibility that "[a] flippant, careless, or inaccurately recorded response from any of the numerous persons interviewed would seriously prejudice defendants" (Moran Mem. 5). To have counsel conduct the investigation will, no doubt, involve considerable expense. But the choice to proceed with such caution is entirely defendants' own. Plaintiffs, after all, have not asked defendants to depose their present and former employees[11] or to supply transcripts of the interviews. Any "careless" or "flippant" remark may be easily edited out in the process of preparing the final interrogatory answers.

9. Plaintiffs Mem. 5–6 accurately summarizes the interrogatories:

Interrogatories No. 1 and 5 seek information concerning any meetings, communications, agreements or understandings between the defendants and other piping contractors regarding pricing practices, bids, allocation of customers or territories, terms of sales and market conditions.

Interrogatory No. 2, as amended by Exhibit M, seeks identification of diaries, travel records, expense accounts, telephone records and similar materials kept by employees engaged in pricing, marketing or sales of piping construction.

Interrogatory No. 4, as amended by Exhibit M, seeks pricing, marketing or sales information transmitted to or by any trade association or other group of piping contractors.

Interrogatory No. 6 asks whether any person ever requested defendants to submit a bid and

if so, the circumstances surrounding that request.

Interrogatory No. 7 asks whether defendants changed their method of computing bids after the U.S. Government initiated an investigation or issued a complaint and, if so, the circumstances surrounding that change.

10. Because the policy of the federal rules favors open discovery, the burden is on the objecting parties to show why release of the requested information would be improper. *In re Folding Carton Antitrust Litigation*, 83 F.R.D. 251, 254 (N.D.Ill.1978).

11. Defendants should not be required to seek information from former employees no longer within their control. See *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 420, 423 (N.D.Ill. 1977).

 Nor may defendants make out a case of undue burden by contending the investigatory process will be encumbered and protracted because many of the individuals to be interviewed may be subject to criminal prosecution as a result of information they provide. Under such circumstances, defendants say (Moran Mem. 6):

> It would hardly be fair to conduct interviews without first warning the interviewee of the potential consequences and suggesting that he may wish to have a lawyer.

Were defendants able to invoke in support of their burdensomeness claim the interests of third-party interviewees in avoiding criminal prosecution, they would effectively take for their own the interviewees' Fifth Amendment rights against self-incrimination. Corporations have no such right. And because that right is personal, it may not be advanced vicariously. *Shopping Carts*, 95 F.R.D. at 308 and cases there cited. Defendants may not avoid those settled principles by asserting that the potential Fifth Amendment rights of the interviewees makes answering the interrogatories unduly burdensome.

Defendants' second principal argument—that the information sought by way of the interrogatories may be obtained more efficiently via depositions—in substantial measure overlaps the first. It does, however, occasion consideration of the 1983 amendments to Rule 26—amendments "designed to encourage district judges to identify instances of needless discovery and to limit the use of the various devices accordingly." Rule 26(a), Advisory Committee Note (1983) (Discovery Methods).[12] Rule 26(a) was amended by deleting its blank-check provision:

> Unless the court orders otherwise under subdivision (c) of this rule, the frequency of use of these methods is not limited.

At the same time, a corresponding insertion was made in Rule 26(b):

The frequency or extent of use of the discovery methods set forth in subdivision (a) shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

Subdivisions (i) and (iii) are potentially relevant here.

As to subdivision (iii), the 1983 Advisory Committee Note explained it was intended:

> to address the problem of discovery that is disproportionate to the individual lawsuit as measured by such matters as its nature and complexity, the importance of the issues at stake in a case seeking damages, the limitations on a financially weak litigant to withstand extensive opposition to a discovery program or to respond to discovery requests, and the significance of the substantive issues, as measured in philosophic, social, or institutional terms.

Examination of the parties' submissions reveals nothing to indicate a disproportionality between plaintiffs' interrogatories and this action. Most of the information sought is fundamental to a resolution of the parties' dispute on the merits. Moreover, the lawsuit is highly complex, involving as it does allegations of antitrust violations spanning a 20-year period against multiple defendants and encompassing innumerable individual actors and events. Nor is there any doubt of the importance of the substantive issues. Finally, there has been no showing of financial weakness of any defendant, so as to make these inter-

---

**12.** Not one of the parties has drawn attention to the 1983 amendments, an oddity given their obvious relevance to the issues now in dispute.

rogatories especially burdensome. Subdivision (iii) accordingly provides no basis for requiring plaintiffs to proceed by oral depositions.

Neither does subdivision (i). That provision, the Advisory Committee stated, "is designed to minimize redundancy in discovery and encourage attorneys to be sensitive to the comparative costs of different methods of securing information." There is no indication, however, that the information sought by plaintiffs would be obtained more efficiently by deposition than by interrogatories. Indeed, as *Shopping Carts* (a similar case) observed, 95 F.R.D. at 307-08:

> Providing this information by interrogatories may effect judicial economy and economic savings to the parties. Plaintiffs will know whom they have to depose; unnecessary depositions may be avoided; information which might not be obtained by deposing a few individuals may be obtained from the corporate defendants; important conversations, communications and documents will be highlighted; delay may be avoided; and the issues for trial may be narrowed.

Defendants do claim plaintiffs have enough leads to begin a useful program of depositions: a bill of particulars, a criminal indictment, the agreement of settling defendants to provide information. That mere assertion, however, does not explain why it is more efficient for plaintiffs to seek information about defendants by circuitous means rather than by direct questions to defendants themselves.[13] It seems quite inconsistent with the overall policy of the federal discovery rules—even taking into account the 1983 amendments to Rule 26—to require parties, like Polonius, by indirection to find directions out.

 Though Rule 26 thus does not counsel substituting depositions for the initial Second Set interrogatories, that is neither the only alternative nor the end of the story. In light of the 1983 amendments to the Rule, the corporate defendants are ordered to answer those interrogatories subject to the following limitations:

1. In its present sweeping form Int. II-6 need not be answered. It is plainly burdensome and oppressive to expect a party to search out and then provide an explanation of every bid or potential bid on piping contracts over nearly three decades—that information in its totality bears too attenuated a relationship to plaintiffs' antitrust claims. Unless and until plaintiffs develop a narrower focus for that interrogatory, they will have to make do with information derived from their other comprehensive interrogatories and document requests (including Reqs. 12 and 14).[14]

**13.** Nor is it enough to quote Judge Pollack's view (accurate though it is) that interrogatories are the most abused of the discovery devices, *Discovery—Its Abuse and Correction,* 80 F.R.D. 219, 224 (1978). Defendants must show with some specificity how those remarks apply to the present circumstances. They must show, in other words, that the burden of answering substantially outweighs the value to plaintiffs of the information sought. Even under the new Rule 26 standard, "the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." Rule 26, Advisory Committee Note (1983 Amendment, Discovery Scope and Limits).

**14.** That moots defendants' one specific objection to Int. II-6. But because the interrogatory may be renewed in narrowed form, the objection bears brief discussion. Defendants urge Int. II-6 is properly a Rule 36 admission request, so that by posing it as an interrogatory plaintiffs seek to circumvent the provisions of Rule 36. That argument fails to comprehend the different though related purposes of an admission and an interrogatory. Admissions are designed to narrow the issues that must be resolved at trial. If there is no dispute as to a factual matter, the taking of proofs at trial as to that issue becomes a needless formality. Admissions avoid such a waste of time. See *Ranger Ins. Co. v. Culberson,* 49 F.R.D. 181, 183 (N.D.Ga.1969). Proper interrogatories, however, are merely requests for information "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1). It may turn out, of course, that facts first uncovered in the answers to interrogatories will later appear again in the form of a request for admissions, but a party can hardly seek the admission of facts it has yet to discover. As Plaintiffs' R.Mem. 16 says: "Plaintiffs are entitled to defendants' version of the facts."

2. In answering Ints. II–1, 2, 4, 5 and 7 the corporate defendants need only inquire of, and review documents maintained by, its present personnel who have substantial responsibility in the business areas that are the subject of inquiry. To the extent if any that like documents were maintained by persons no longer with defendants, the parity-of-burdens principle entitles them to comply with Rule 33(c) instead.

### 3. Ints. II–8 and 13 (Corporate Defendants)

■■■ Int. II–8 asks defendants to identify anyone they may have interviewed "concerning meetings, discussions or communications among officers or employees of any competitors with regard to piping construction bids, pricing, customers or territories" and the circumstances of the interview. Defendants claim (Moran Mem. 9) that question is "a direct attempt to intrude upon the work product of defendants' attorneys."

That objection has force, even if it somewhat overstates the intrusiveness of plaintiffs' question. It is settled law:

> that the work product concept furnishe[s] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery.

8 Wright & Miller, *Federal Practice and Procedure* § 2023, at 194 & n. 16 (1970). Thus a party may properly "inquire into the identity and location of persons having knowledge of relevant facts." *Besly-Welles Corp. v. Balax, Inc.*, 43 F.R.D. 368, 371 (E.D.Wis.1968). But the party may not do so in a fashion that effectively infringes upon the opposing attorney's preparation of his case for trial. *Besly-Welles*, at 371; *In re Grand Jury Subpoena Dated November 8, 1979*, 622 F.2d 933, 935–36 (6th Cir.1980).

■■■ Int. II–8 oversteps that boundary. Its legitimate concern is with the identification of persons who have *knowledge* "concerning meetings, discussions or communications among officers or employees of any competitors with regard to piping construction bids, pricing, customers or territories." To go beyond that—to tell plaintiffs whom defendants have interviewed, where and when such interviews took place and whether or not a record was made—is to give plaintiffs no more knowledge of substantive relevant facts, but rather to afford them the potential for significant insights into the defense lawyers' preparation of their case (and thus their mental processes). That possibility is enhanced by the broad scope of disclosure otherwise sanctioned in this opinion. As *Uinta Oil Refining Co. v. Continental Oil Co.*, 226 F.Supp. 495, 506 (D.Utah 1964) put it:

> The detailed pattern of [a party's] investigation and exploration in and of itself is not a proper subject for discovery.

In much the same way, Int. II–13 asks defendants to identify the persons who "furnished information utilized in or participated in the preparation of the answer" to each of the Second Set interrogatories. Defendants have agreed to identify those who furnished factual information, but they object to identifying persons who "participated" in preparing the answers. They are right. If anyone fits the second description but not the first, he or she is a draftsman, not a source of information. Identity of any such person is irrelevant. It is really nonsense to say (Pl.Mem. 9) the information is relevant "to fixing responsibility for the answers" to the Second Set Interrogatories. *Defendants* are responsible for the answers, whoever the drafters may have been.

Even though the parties have treated Ints. II–8 and 13 as an entry, they thus merit different treatment. Int. II–8 need not be answered, and only the first part of Int. II–13 need be.

### 4. Ints. II–10, 11 and 12 (Corporate Defendants)

■■■ These interrogatories seek information about the corporate defendants' fi-

nancial affairs from 1978 to the present.[15] Plaintiffs offer three justifications for the propriety of these questions:

1. Under Rule 64 and Illinois law, plaintiffs are considered to be existing creditors of defendants and are entitled to the remedies available to a creditor under the Illinois Attachment Act, Ill. Rev.Stat. ch. 110, ¶¶ 4–101 to 4–145 (1984) against a debtor who has undertaken or is about to undertake a fraudulent conveyance of its assets.

2. Because antitrust treble damages are punitive, defendants' financial condition is relevant to the subject matter of the action.

3. Information as to defendants' financial condition is calculated to lead to the discovery of evidence about the price-fixing alleged by plaintiffs.

None of those "reasons" is even specious. ■ As to the first, there is no precedent for defining Rule 26 relevancy by reference to the provisions of Rule 64. Nor is there any reason to do so now. State law remedies preserved to plaintiffs by Rule 64 are not impaired by denying plaintiffs the opportunity to pry into defendants' financial affairs under the guise of discovery. Invocation of the Attachment Act requires a specific showing by the creditor and specific protection for the debtor. It would be anomalous (perhaps an understatement) to allow plaintiffs to draw upon the liberal discovery provisions of the federal rules and the power of this Court to bypass those safeguards in a snooping expedition. Like any other creditor, plaintiffs may call on the attachment statute *if* the appropriate occasion arises, but they may not comb defendants' financial records in anticipation of such an event. That would stretch the Rule 26 definition of relevance impermissibly.[16]

■ Plaintiffs' second argument correctly rehearses the rule that in a punitive damages action a defendants' financial condition is a proper subject for pretrial discovery. That is so because the punitive character of an award relates directly to the defendant's overall financial status. If the jury is effectively to exercise its discretion to award punitive damages, it must have access to information about defendant's finances. See *Vollert v. Summa Corp.*, 389 F.Supp. 1348, 1351–52 (D.Hawaii 1975). But that consideration is wholly irrelevant in the antitrust context. While the trebling component of antitrust damages is indeed punitive, there is nothing discretionary about it. It represents Congress' judgment, not the jury's, about the appropriate level of punishment for antitrust violations. See *Locklin v. Day-Glo*

---

**15.** Int. II–10 seeks information as to defendants' assets and liabilities for each fiscal year from 1978 to and including 1982. Int. II–11 inquires into the corporate status of defendants. Int. II–12 asks information about other financial affairs of defendants, including stock and real estate transfers and payments of any kind to affiliated business entities.

**16.** To support their Rule 64 argument, plaintiffs point to cases decided under Rule 69 permitting discovery in aid of execution of judgment. *Ranney-Brown Distributors, Inc. v. E.T. Barwick Industries, Inc.*, 75 F.R.D. 3, 5 (S.D.Ohio 1977). That, however, fails to take note of a clear difference between the two rules. Under Rule 69 a judgment creditor may, in aid of the judgment or execution, "obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held." There is no comparable language in Rule 64. Given that

clear difference, there is no room for plaintiffs' argument that the rationale for allowing discovery in connection with Rule 69 justifies discovery in connection with Rule 64. Moreover, when the drafters of the Rules confronted the question of prejudgment discovery of a defendant's financial affairs, they drew a narrow line. In adopting Rule 26(b)(2) they required disclosure of a defendant's liability insurance coverage but stated further (Rule 26(b)(2), Advisory Committee Note (Subdivision (b)(2)—Insurance Policies)):

> The amendment is limited to insurance coverage, which should be distinguished from any other facts concerning defendant's financial status (1) because insurance is an asset created specifically to satisfy the claim; (2) because the insurance company ordinarily controls the litigation; (3) because information about coverage is available only from defendant or his insurer; and (4) because disclosure does not involve a significant invasion of privacy.

*Color Corp.,* 429 F.2d 873, 878 (7th Cir. 1970). In an antitrust case the jury's duty is simply to calculate the actual harm suffered by plaintiff as a result of defendant's anticompetitive conduct. At that point the statutory trebling provision takes over. That scheme presents no occasion for assessing the size of the award in relation to defendant's financial condition.

Even plaintiffs seem to lack conviction in their third argument. They provide no specific indication as to how information about defendants' financial affairs since 1978 is calculated to discover evidence about price-fixing and bid-rigging stretching back to 1956. While *Folding Cartons* (76 F.R.D. at 427) held financial information discoverable on the theory it might "help plaintiffs determine whether or not defendants enjoyed unreasonably high profits," the financial information question related to the period of alleged illegal activity. See also *Shopping Carts,* 95 F.R.D. at 308–09. In any event that seems the long way around in a case like this, seeking to pile inference on inference as a substitute for directly probative (and more readily available) evidence of bid-rigging.

In sum, this Court will not lend itself to a fishing expedition in the waters of defendants' finances. None of Ints. II–10, 11 and 12 need be answered.

### 5. *Attorney-Client Privilege*

 Apart from the specific interrogatories themselves, the parties also disagree about what information defendants must supply with respect to any assertions of privilege. At the July 29, 1983 conference the parties were unable to reach agreement on whether defendants must supply the names of persons who received any document or were present during any communication as to which privilege is asserted (Pl.Ex. M). Plaintiffs say they must have this information to determine whether the asserted privilege in fact exists, pointing to the familiar formulation by Judge Wyzan-

ski in *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950) (emphasis added):

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client *(b) without the presence of strangers* (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

See also *In re Arthur Treacher's Franchisee Litigation,* 92 F.R.D. 429, 435 (E.D. Pa.1981) (compelling disclosure of the identities of those present at meetings as to which attorney-client privilege has been invoked).

Defendants respond unpersuasively that tracking down the requested information will be unduly burdensome. In the first place, information must be supplied only as to communications and documents for which defendants assert a privilege. More important, plaintiffs have every right to ascertain whether a claim of privilege is justified under the *United Shoe* standard and should not be denied information critical to doing so. Recognizing as much, perhaps, Ecomony Mem. 14 says Economy Defendants will provide the requested information after all. Other defendants must do so as well. Accordingly the Motion is granted in that respect.

### 6. *Second Set Interrogatories (Individual Defendants)*

While the Motion seeks to compel the individual defendants to answer the Second Set Interrogatories put separately to them, the parties' briefs are silent on that score.[17]

---

17. In fact the only reference in any of the briefs to those interrogatories appears at Moran Mem. 3:

> As set forth in the 12(d) minutes ... the individual defendants raised objections to these interrogatories under the Fifth Amend-

At the July 29, 1983 conference the individual defendants adopted the corporate defendants' positions as to the individual interrogatories,[18] "except that in addition, defendants refuse to answer any interrogatories to which a Fifth Amendment objection was made" (Pl.Ex. M at 4–5). Nothing in the record before this Court indicates which of the individual interrogatories have been the object of Fifth Amendment objections, though the passing reference in Moran Mem. 3 (see n. 17) at least implies they all have. In any event, plaintiffs' silence on the subject leads this Court to conclude plaintiffs (1) have abandoned their motion to compel so far as the interrogatories to individual defendants are concerned and (2) therefore no longer seek a disposition of the question here.

### Requests for Production

#### A. Reqs. 8, 17 and 19

At the October 26/November 1, 1982 conference defendants agreed to comply with modified versions of Reqs. 8, 17 and 19 (Pl.Exs. G and H), calling for documents relating to any meeting of piping contractors or to the dealings of any trade association whose membership includes piping contractors or pertaining to information obtained from the F.W. Dodge construction reports or the Credit Exchange Bureau in connection with any piping construction project. Despite their agreement, defendants have yet to produce those documents.

Because these document requests are precisely analogous to Ints. I–1, 2 and 4 (discussed earlier in this opinion), there is no need to repeat the parties' contentions. Just as defendants must honor their agreement to answer those interrogatories, so they must honor their agreement to produce the documents in question.[19] Accord-

ingly the Motion is granted as to Reqs. 8, 17 and 19 as modified in the minutes of the October 26/November 1 conference.

#### B. Disputed Requests

##### 1. Reqs. 12 and 14

■ These requests cover (1) all documents relating to piping construction projects performed by defendants or on which defendants made bids and (2) all documents relating to piping construction projects on which defendants did not bid. Though the parties reached agreement at the General Rule 12(d) conference as to the substance of these requests (Pl.Exs. G and H), they remain at odds over how long plaintiffs shall have continued access to the documents produced. Instead of calling for immediate production, plaintiffs now ask continuing access upon 10 days' notice or such other reasonable notice as this Court may designate. Only as discovery proceeds, they say, can they know just what documents they must inspect. Without the flexibility continuing access affords, they will be forced to incur the substantial and unnecessary expense of copying all of the documents regardless of their ultimate relevance. On the other hand, defendants have volunteered to make the documents available to plaintiffs for 90 days. That amount of time, they contend, is fully adequate for an initial review of the documents to identify those that are relevant.

Continuing access is often granted in large antitrust cases, usually through the use of a centralized document depository. See *Manual* Pt. 1, § 2.50, 1 (Pt. 2) *Moore's*, at 121–22. No such depository has been established in this case, increasing the risk that continuing access will disrupt the

---

ment. Plaintiffs have not challenged these objections. Accordingly, defendants will address only the objections of corporate defendants to the second set of interrogatories.

**18.** Individual Ints. II–1, 2, 3, 4, 5, 6, 7 and 10 repeat essentially verbatim Corporate Ints. II–1, 2, 4, 5, 6, 8, 9 and 13. Individual Ints. II–8 and

9, like Corporate Ints. II–10–12, seek information about defendants' financial affairs for the period 1978–82.

**19.** Economy Defendants, despite their opt-out, are also bound to comply by parity of reasoning with n. 4.

present business of those producing the documents. However defendants are already required to retain the documents in question under the terms of Pretrial Order No. 2. Moreover, the most recent files plaintiffs seek to review are now seven years old (see Pl.Ex. G at 2, limiting discovery to events occurring between 1956 and 1977).

Under such circumstances continuing access on 10 business days' notice seems reasonable. Plaintiffs are cautioned to exercise their right of access with the utmost responsibility, bearing in mind the burden imposed upon defendants. Should plaintiffs abuse that right, this Court will be responsive to defendants' motion for a protective order. With that caveat, the Motion is granted as to Reqs. 12 and 14.

### 2. *Req. 13*

■ Here plaintiffs ask for documents relating to value received in exchange for (1) fictitious or complementary bids or (2) refraining from bidding. At issue is whether defendants must segregate the requested documents to correspond to the terms of this request. Plaintiffs argue they must.

Defendants respond that under Rule 34(b) they are obligated only to produce the documents "as they are kept in the usual course of business"—that is, in individual job files. But that assertion inserts a period (the British "full stop") too early in Rule 34(b), which was amended in 1980 to include the following sentence:

A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories of the request.

That amendment was aimed at forestalling such abuses as the deliberate mixing of "critical documents with others in the hope of obscuring significance." Rule 34, Advisory Committee Note (1980 Amendment, Subdivision (b)). Because the documents (if they exist) would reflect payoffs, plaintiffs can legitimately fear defendants' unwillingness to segregate the documents masks a hope to obscure. Accordingly plaintiffs have exercised the Rule 34(b) alternative to request the segregation of documents in accord with the request.[20] Consequently the Motion is granted as to Req. 13.

### 3. *Req. 16*

■ Plaintiffs asks production of desk pads, calendars or other records of any "communications, meetings or appointments with representatives of other piping contractors" by a representative of a defendant company. Defendants object to inclusion of the word "meeting," defined as "any coincidence of the presence of any persons," whether by chance or prearranged, and including telephone conversations. Defendants claim the term is overbroad, encompassing "every single contact between any two persons" over more than 20 years.[21] But plaintiffs accurately point out the word is limited by the request itself to meetings with other piping contractors that were somehow memorialized. Moreover, the broad definition of the term reflects the possibility that illegal conduct may well have been the product of subtle and diverse contacts between piping firm representatives. Accordingly the Motion is granted as to Req. 16.

### 4. *Req. 18*

■ Plaintiffs ask production of all defendants' corporate minute books for the

---

**20.** That the option afforded by Rule 34(b) as amended no longer belongs exclusively to defendants is beyond serious doubt. Otherwise the very purpose of the 1980 amendment would be thwarted. See Sherman & Kinnard, *Federal Court Discovery in the 80's—Making the Rules Work*, 95 F.R.D. 245, 255–58 (1982). In this case the burden to a stranger of rummaging through what may be massive job files to find the "smoking gun," coupled with the inculpatory

nature of the documents covered by the request, justifies placing the burden on the discovered rather than the discovering party.

**21.** This Court is puzzled by defendants' objection to the word "meeting" while letting pass the word "communication." In its usual meaning the latter term would appear to be at least as broad as "meeting."

relevant period regardless of the subject matter addressed. They contend even "minutes which do not mention piping matters may nevertheless relate to matters which are relevant to plaintiff's [sic] claim of a violation of the anti-trust laws" (Pl. Mem. 24). Defendants, on the other hand, argue plaintiffs' request is unduly broad and will unnecessarily compromise "highly confidential and sensitive business information" (Economy Mem. 17). They propose rather to produce minutes that mention, relate or refer to piping construction, supplies, equipment or services.

Defendants are plainly right. As so limited, the Motion is granted as to Req. 18.

### Fees and Other Expenses

■ Under Rule 37(a)(4) a prevailing party may recover the reasonable expenses, including attorney's fees, incurred in either opposing or supporting the motion. To deal with partial success the Rule further provides:

> If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

Rule 37(a)(4) is intended to encourage extrajudicial discovery with a minimum of court intervention. *Ohio v. Crofters, Inc.,* 75 F.R.D. 12, 20–21 (D.Colo.1977), *aff'd sub nom. Ohio v. Arthur Andersen & Co.,* 570 F.2d 1370, 1375–76 (10th Cir.), *cert. denied,* 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978). Because both sides have contributed materially to the protraction of this discovery dispute—and therefore of this opinion—Rule 37(a)(4) is best served by letting the expenses rest where they have fallen. Consequently the Motion for an award of fees and other expenses is denied.

### Conclusion

As already indicated, the Motion is granted as to:

(1) Ints. I–1, 2 and 4;

(2) Ints. II–1, 2, 4, 5, 7 and 13 (all as limited in this opinion) to the corporate defendants;

(3) the Second Set instruction on attorney-client privilege; and

(4) Reqs. 8, 12, 13, 14, 16, 17, 18 (as limited in this opinion) and 19.

It is denied as to:

(1) any waiver of objections to the Second Set by certain defendants;

(2) Ints. II–6, 8, 10, 11 and 12 to corporate defendants;

(3) the Second Set interrogatories to individual defendants; and

(4) any award of fees and other expenses.