**In re MICROCRYSTALLINE CELLULOSE ANTITRUST LITIGATION.**

**Master File No. 01–CV–111. MDL.No. 1402.**

United States District Court, E.D. Pennsylvania.

May 6, 2004.

Anthony J. Bolognese, Bolognese & Associates, LLC, Arthur M. Kaplan, Fine, Kaplan & Black, Philadelphia, PA, Bernard Persky, Goodkind, Labaton, Rudoff & Sucharow, New York City, Elizabeth Fegan Hartweg, The Wexler Firm, Chicago, IL, Eric L. Cramer, Berger and Montague, H. Laddie Montague, Jr., Berger & Montague PC, Phila, PA, James R. Malone, Chimicles & Tikellis LLP, Haverford, PA, Joseph Bruckner, Lockridge, Grindal, Nauden, Holstein, PLLP, Minneapolis, MN, Linda P. Nussbaum, Cohen, Milstein, Hausfeld & Toll, New York City, Michael M. Baylson, Duane Morris LLP, Philadelphia, PA, Michael Criden, Hanzman Criden Chaykin & Rolnick, P.A., Coral Gables, FL, Mila F. Bartos, Finkelstein Thompson & Loughran, Washington, DC, Mitchell Berger, Berger Singerman, Ft. Lauderdale, FL, Nicholas E. Chimicles Chimicles & Tikellis LLP, Haverford, PA, Robert N. Kaplan, Kaplan Fox & Kilsheimer LLP, New York City, for Plaintiff.

Carolyn Hazard Feeney, Christine C. Levin, Dechert LLP, Stephen D. Brown, Tracey R. Gainor, Dechert Price & Rhoads, Michael I. Frankel, Dechert, Francis P. Newell, Montgomery McCracken Walker & Rhoads, LLP, Philadelphia, PA, Sean D. Corey, Cleary Gottlieb Steen & Hamilton, Washington, DC, for Defendant.

Ruthanne Gordon, Berger & Montague, P.C., Philadelphia, PA, for Respondent.

David I. Gelfand, Mark Leddy, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, Ben Furth, Furth Law Firm, San Francisco, CA, for Movant.

Francis P. Newell, Montgomery McCracken Walker & Rhoads, LLP, Philadelphia, PA, Sean D. Corey, Cleary Gottlieb Steen & Hamilton, Washington, DC, for Defendant/Movant.

## MEMORANDUM

O'NEILL, District Judge.

This Multi–District Litigation is an antitrust class action brought by purchasers of microcrystalline cellulose ("MCC") against two of its major manufacturers, FMC Corporation and Asahi Kasei Corporation. In its varying formulations, MCC is a popular ingredient in many processed foods and vitamin and pharmaceutical tablets. On August 13, 2003, I certified three classes consisting of MCC buyers in the food, vitamin, and pharmaceutical industries. Now before me is plaintiffs' Motion to Compel FMC and Asahi to Produce Documents in response to Plaintiff's Document Requests. Plaintiffs have withdrawn the Motion in its entirety with respect to Asahi and have also resolved some of their discovery disputes with FMC. *See* Letter from H. Laddie Montague to court of April 20, 2004. The sole remaining issue in the pending Motion is whether FMC must produce documents relating to domestic transactional sales for January 1, 1984 through December 31, 2003. *See id.*

The general allegation in this case is that FMC and Asahi agreed to refrain from selling non-branded MCC products in certain markets in order to secure each firm's market power in its preferred geographic area. Plaintiffs allege that this market allocation agreement was in force from 1984 until 1997 and that it raised the price of MCC products used in the food, vitamin, and pharmaceutical industries. *See* Pls.' Mot. for Class Certification at 1–2. In their Motion to Compel, plaintiffs claim that they must examine FMC's domestic transactional sales through December 31, 2003 in order to compare market conditions during and after the alleged conspiracy. Defendants argue that plaintiffs have failed to show good cause for requesting FMC's sales data for the entire 1984 through 2003 period. Defendants have provided, or will shortly provide, the relevant domestic

sales data through 2000 and argue that forcing them to produce such data through 2003 would be onerous and beyond the scope of reasonable discovery. Even if the alleged conspiracy was in effect until 1997, which defendants dispute in several respects,[1] the defendants claim that three years of post-conspiracy data is more than adequate for plaintiff's comparative analysis and damage estimation. *See* Defs.' Mem. of Law in Opp'n to Plfs.' Mot. ("Defs.' Mem.") at 2, 9–10.

Federal Rule of Civil Procedure 26(b)(1) limits discovery to information "relevant to the claim or defense of any party." Rule 26(b)(2)(iii) permits a court to further limit the extent of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(iii). Defendants maintain that plaintiffs have not demonstrated that the burden of producing information sought in the Motion to Compel is outweighed by its benefit or importance in resolving the major issues at stake in this case. *See* Defs.' Mem. at 4.

Although Congress added the aforementioned limits to Rule 26 in 2000 to eliminate wasteful or oppressive discovery requests, plaintiffs assert that courts generally construe Rule 26(b)(1) quite broadly. *See* Pls.' Mem. in Support of Mot. to Compel ("Pls.' Mem.") at 7, citing *inter alia* 6 *Moore's Federal Practice* § 26.41[6][c]; *Medmarc Cas. Ins. Co. v. Arrow Int'l Inc.*, 2002 WL 1870452, at *2 (E.D.Pa. July 29, 2002) ("Relevancy should be broadly construed at the discovery state of litigation."). As plaintiffs note, some courts have also held that a broad scope of discovery is particularly appropriate in antitrust litigation because, for example,

---

1. In addition to disputing the existence of the conspiracy itself, defendants contest whether plaintiffs have properly asserted that the conspiracy ended in 1997. Defendants point out that the plaintiffs rely on the Federal Trade Commission proceedings for all of the allegations in their complaint except the duration of the alleged conspiracy and that plaintiffs have never alleged any

specific wrongdoing by defendants after 1995. *See* Defs.' Mem. at 1, 5–9. The FTC Proposed Consent Order regarding FMC and Asahi's anti-competitive conduct states that the alleged market allocation agreement was in effect from 1984 to 1995, *see id.* at 6 (citing Exs. B, C), while the plaintiffs allege that the conspiracy continued through December 31, 1997.

**430**

relevant business documents pertaining to the antitrust conspiracy may not exist and covert behavior may have to be proven through less direct means. *See* Pls.' Mem. at 8, citing *New Park Entm't, LLC v. Electric Factory Concerts, Inc.*, 2000 WL 62315, at *3 (E.D.Pa. Jan.13, 2000) ("[D]iscovery in antitrust litigation is most broadly permitted and the burden or cost of providing the information sought is less weighty a consideration than in other cases") (citation omitted). With respect to the factors set forth in Rule 26(b)(2)(iii), plaintiffs claim that the requested information would be very beneficial in light of the methodologies proposed by their experts for calculating class-wide damages that involve comparing MCC prices during and after the conspiracy. *See* Pls' Mem. at 15 (citing proposals of Richard Frank and Douglas F. Greer). Dr. Frank stated specifically that he would like to see the data set of FMC sales extended though 2003 in order to "ensure a more complete and precise analysis of post-class period benchmark prices and damages . . . ." Pls.' Mem. Ex. N ¶ 6 (Declaration of Dr. Richard G. Frank).

According to plaintiffs, several courts have allowed discovery of data from periods before or after a conspiracy in order to establish liability and determine damages. *See* Pls.' Mem. at 10, citing *New Park Entm't, LLC v. Electric Factory Concerts, Inc.*, 2000 WL 62315, at *3 (E.D.Pa. Jan.13, 2000) (permitting pre-complaint discovery seven years before damage period); *Board of Edu. of Evanston Township High Sch. Dist. No. 202 v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 29 (N.D.Ill.1984) (authorizing a discovery period of 1954–1984 that encompassed seven years after the alleged conspiracy). Defendants point out that none of the cases cited allowed discovery of transactional data in an antitrust case more than six years after the alleged antitrust violation ended, whereas courts have permitted approximately three years of post-violation discovery. *See* Defs.' Mem. at 4–5.

I will assume for purposes of this Motion that the alleged conspiracy ended in 1997, which means that uncontested discovery affords the plaintiffs the opportunity of analyzing at least three years of post-conspiracy domestic sales data. Although, as plaintiffs point out, the FTC Order effective June 12, 2002 barred FMC from acting as Asahi's U.S. distributor for a ten-year period in order to eradicate the effects of the alleged market allocation, *see* Pls' Mem. at 15, one would expect the market to change enough within three years to show that the alleged allocation affected prices. While recognizing that a broad scope of discovery in this large class action is appropriate, I conclude that plaintiffs' request for sales data through the end of 2003 is unreasonable given the minimal potential benefits of this information. I acknowledge that sales and pricing data after the end of the allegedly anticompetitive conduct are needed in order to prove liability and calculate damages with the chosen methodologies, but I am not convinced that plaintiffs require more than three years of such data to conduct a meaningful "before and after" analysis. In denying this Motion to Compel, I do not find that plaintiffs will be deprived of any discovery materials that are reasonably necessary in developing and preparing their case.